MONSANTO COMPANY *vs.* DEPARTMENT OF PUBLIC
UTILITIES & another.[1]

Suffolk. November 7, 1991. - February 24, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, & LYNCH, JJ.

*Massachusetts Antitrust Act. Electricity. Electric Company. Public Utilities*, Electric Company, Antitrust laws, Conservation.

Where an electric utility company adopted a conservation and load management plan providing for the company to pay funds to its industrial customers to finance the cost of fuel savings measures, a feature of the plan requiring that any industrial customer who accepted such funds agree not to self-generate electricity in excess of a stated amount during the three-year period after the company paid its final incentives to the customer was held to be in pursuance of a legislatively expressed State policy, as well as the policy of the Department of Public Utilities, and thus not violative of Federal or State antitrust laws. [28-30]

A requirement that an industrial customer of an electric utility company who accepted funds from the company to finance the cost of fuel savings measures agree not to self-generate electricity in excess of a stated amount during the three-year period after the company paid its final incentives to the customer was not shown, on the record before the Department of Public Utilities, to be unlawfully discriminatory against industrial customers who were self-generators. [30]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on July 25, 1990.

The case was reported by *Lynch*, J.

*Andrew J. Newman* (*Deidre T. Lawrence* with him) for the plaintiff.

*Jon Laramore*, Assistant Attorney General, for Department of Public Utilities.

---

[1]Western Massachusetts Electric Company, as an intervener.

*Maurice L. Zilber* (*Tracey E. Madden* with him) for Western Massachusetts Electric Company, intervener.

WILKINS, J. In September, 1990, the Western Massachusetts Electric Company (company) petitioned the Department of Public Utilities (department) for approval of its conservation and load management programs and of its right to recover certain related costs. In order to reduce the consumption of electricity, the department requires electric utilities to adopt various conservation programs that are cost effective to the utilities. These programs make company funds available to customers who implement fuel savings measures. The department ruled that the company had made important strides in meeting the department's policy objectives and that generally the company's programs were comprehensive and cost effective.

The Monsanto Company, an industrial customer of the company, operates a self-generating facility that can supply a portion of Monsanto's electricity requirements. It appeals from the department's June, 1990, decision approving the company's program with certain modifications. In particular, Monsanto objects to certain limitations in the company's conservation program on the receipt of benefits by industrial customers who are self-generators. These restrictions provide, in part, that any industrial customer who accepts funds from the company to finance electric energy efficiency measures must agree not to self-generate electricity in excess of a stated amount during the three-year period after the company pays its final incentives to the customer (or else it must refund the amount of the benefit).[2]

In this appeal under G. L. c. 25, § 5 (1990 ed.), which is here on a reservation and report by a single justice of this court, Monsanto argues that the restrictions violate State and Federal antitrust laws, including the Sherman Act (15

[2]The details of the program are not important to this appeal. It is sufficient to say that industrial self-generators (and others who receive electricity from sources other than the company) do not receive the same treatment under the company's conservation programs as do customers who rely on the company fully.

U.S.C. §§ 1-7 [1988 & Supp. I 1989]) and the Clayton Act (15 U.S.C. §§ 12-27 [1988]), and that the denial of or reduction in incentive payments to a self-generator is unlawful and causes undue discrimination among ratepayers.[3]

The department's decision does not analyze the merits of the claimed antitrust violations because the department concluded that the company's plan was immunized from antitrust liability under the State action doctrine. See *Parker* v. *Brown*, 317 U.S. 341 (1943).[4] The department relied on the State action standard for antitrust immunity set out in *California Retail Liquor Dealers Ass'n* v. *Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980). To enjoy immunity, the "challenged restraint must be 'one clearly articulated and affirmatively expressed as state policy,'" and that policy must be "'actively supervised'" by the State. *Id.*, quoting *Lafayette* v. *Louisiana Power & Light Co.*, 435 U.S. 389, 410 (1978). Monsanto does not argue that the plan approved by the department is not actively supervised. It argues, however, that the department made no finding of a State policy to displace competition and that the principles of *Cantor* v. *Detroit*

---

[3]Monsanto's appeal from the department asserts that the restrictions violate the Public Utility Regulatory Policies Act of 1978 (PURPA). See 16 U.S.C. §§ 2601 et seq. (1988). The department's decision did not discuss PURPA. As far as the record shows, Monsanto did not raise any argument based on PURPA before the department in this proceeding, although it has done so in an appeal from a subsequent department decision concerning the company. We shall not specifically address the PURPA claim. See *Seagram Distillers Co.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 713, 724 (1988).

[4]The Massachusetts Antitrust Act (G. L. c. 93, §§ 1-14A [1990 ed.]) states that it should be "construed in harmony with judicial interpretations of comparable federal antitrust statutes insofar as practicable." § 1. That language suggests the application of State action immunity principles to G. L. c. 93. See *Commonwealth* v. *Mass. CRINC*, 392 Mass. 79, 90-91 (1984). Section 7 (*b*) reaches the same result (and perhaps more) by providing explicitly that G. L. c. 93 does not apply to "[a]ny activities which are subject to regulation or supervision by state . . . agencies." Monsanto's claim under the State antitrust law certainly must fail if Monsanto's Federal antitrust claim is foreclosed by the State action doctrine.

*Edison Co.*, 428 U.S. 579 (1976), demonstrate that no State action immunity applies here.[5]

The standard for determining whether State action immunity from antitrust liability applies is discussed most relevantly for our purposes in *Southern Motor Carriers Rate Conference, Inc.* v. *United States*, 471 U.S. 48 (1985). Immunity is not limited to a regulated entity's allegedly anticompetitive activity that is compelled by the State. *Id.* at 59-60. Federal antitrust laws do not forbid conduct by regulated private parties who follow a clearly expressed State policy permitting that conduct. *Id.* at 60. "As long as the State clearly articulates its intent to adopt a permissive policy, the first prong of the [*California Retail Liquor Dealers Ass'n* v. *Midcal Aluminum, Inc.*] test is satisfied." *Id.*

There is not the least doubt that the Commonwealth has clearly expressed a State policy that permits the company, a regulated public utility, to apply its program to Monsanto and thereby to restrict the circumstances in which Monsanto, as a generator of electricity, may participate fully in the company's conservation program. There is ample legislative authorization for the department to regulate the energy conservation programs of utilities and to authorize provisions in such programs to make them work equitably, even if, in doing so, competition may be displaced. See G. L. c. 164, §§ 76, 76C, and 94 (1990 ed.). See G. L. c. 25A, § 11A (1990 ed.), for an expression of the general policy of the Commonwealth concerning conservation programs for certain purposes. The legislative authorization to displace competition that triggers the State action doctrine need not be authorization of specific details. See *Southern Motor Carriers Rate Conference, Inc.* v. *United States, supra* at 63-65; *Lease*

---

[5]Monsanto claims, without the citation of supporting authority, that, because any immunity granted by the State action doctrine is an affirmative defense, the department improperly decided the antitrust issues on State action grounds without first deciding whether there was an antitrust violation. The argument that, in deciding this matter, the department could not go directly to a dispositive affirmative defense is meritless. Our attention will focus on whether there was such a defense.

*Lights, Inc.* v. *Public Serv. Co. of Okla.*, 849 F.2d 1330, 1333 (10th Cir. 1988), cert. denied, 488 U.S. 1019 (1989) ("The first element of the test does not require legislation explicitly authorizing the challenged conduct, but only an indication by the state that it intends to displace competition with regulation in the particular area of commerce"); P. Areeda & H. Hovenkamp, Antitrust Law par. 212.3a, at 144, 146-147 (Supp. 1991).

In this very proceeding, the department focused on Monsanto's claim that the company's program (a) restricts Monsanto's free choice of whether to generate its own electricity or buy it from the company and (b) discriminates unfairly against Monsanto. The department approved, as "a reasonable facet of an effort to discourage free riders," the requirement that any customer that generated more than a certain volume of electricity return the benefit that the company extended to it.[6] The department had a clear policy that utilities "take steps to minimize the 'free-riders' effect." We agree with the department's conclusion that "the program design submitted by the Company appears to be consistent with the clearly articulated and affirmatively expressed policies of the Department."

The department's substantial interest in effective fuel saving programs, even before this proceeding began, is shown both in generic proceedings and in individual company proceedings. This case presents a very different pattern of regulatory concern and direction from that shown in *Cantor* v. *Detroit Edison Co.*, 428 U.S. 579 (1976), on which Monsanto principally relies. There, the challenged conduct, described in a filed tariff approved by the State public service commission, was not the product of a focused review by a State agency that led to a clearly articulated State policy in

---

[6]According to the department's decision, "[f]ree-riders are individuals who would have installed [conservation and load management] measures even without participating in a particular company-sponsored program." Monsanto was in a position to be a free rider in a special way by accepting the company's financial assistance toward fuel saving measures and then reducing its purchases of electricity from the company.

support of that conduct. Nor was there any basis for concluding that the State Legislature intended to authorize the displacement of competition. See *Southern Motor Carriers Rate Conference, Inc.* v. *United States, supra* at 64.

Monsanto argues in its reply brief, quite apart from State and Federal antitrust laws and quite apart from any claimed PURPA violation, that the limitations on its participation in the company's conservation program are undue and unlawful discrimination. The point was made generally to the department but was not presented as meaningful argument in Monsanto's initial brief here. The argument comes too late in a reply brief. *Bassett* v. *Blanchard*, 406 Mass. 88, 90 n.1 (1989). In any event, the program's special treatment of self-generators, such as Monsanto, is reasonable on the record before the department. Monsanto, moreover, may not be entitled to rely on claims that the company's conservation program does not deal with all circumstances in which a customer might be able to take unfair advantage of the company's program.

A judgment shall be entered affirming the decision of the department to the extent that it rejected the claims of the Monsanto Company that the program of conservation and load management of the Western Massachusetts Electric Company violated the State and Federal antitrust acts.

*So ordered.*