2003 OK 27

**FINE AIRPORT PARKING, INC., Appellant,**

v.

**The CITY OF TULSA; The Tulsa Airport Authority; The Tulsa Airports Improvement Trust, Appellees.**

No. 96,748.

Supreme Court of Oklahoma.

March 11, 2003.

Rehearing Denied June 10, 2003.

**8**

Michael Hayes Freeman and Jon David Wyatt, Tulsa, OK, and Michael Paul Kirschner and Patricia D. Macguigan, Oklahoma City, OK, for appellant.

J. Richard Studenny and James L. Kincaid, Tulsa, OK, Martha Rupp Carter, City Attorney, R. Nancy McNair, Senior Assistant City Attorney, and Andrew T. Rees, Assistant City Attorney, Tulsa, Oklahoma, and D. Kent Meyers, Paige S. Bass and Carrie Keating Leonard, Oklahoma City, OK, for appellees.

BOUDREAU, Justice.

¶ 1 Fine Airport Parking, Inc. (Fine) appealed the district court's dismissal of its state antitrust cause of action against the City of Tulsa and its public authorities, the Tulsa Airport Authority and the Tulsa Airports Improvement Trust (collectively Tulsa). The dispositive issue in this appeal is whether the district court erred in dismissing Fine's petition. The appeal presents two underlying questions: 1) Is the federal doctrine of state action immunity incorporated into the Oklahoma Antitrust Reform Act, 79 O.S.2001, §§ 201, *et seq.* and 2) Is Tulsa's operation of an airport parking facility as authorized by the Municipal Airports Act, 3 O.S.2001, §§ 65.1, *et seq.* subject to the Oklahoma Antitrust Reform Act. We answer both questions in the negative. We vacate the opinion of the Court of Civil Appeals and affirm the district court's dismissal order.

## I. Background

¶ 2 Tulsa, through its Airport Authority, operates Tulsa International Airport and various related facilities and services on the airport grounds, including parking facilities for use by the airport customers. Fine operates an off-airport parking business and competes with the Airport Authority to provide parking to the airport customers.

¶ 3 In May 2001, Fine filed suit in the state district court in Tulsa County alleging that

Tulsa violated the state antitrust statutes by its exclusionary practices in operating its parking facilities at the Tulsa Airport. Specifically, Fine alleged that Tulsa excluded competition by setting and maintaining parking prices with unreasonably low profit expectation, a practice that has prevented Fine's off-airport parking business from successfully competing for airport parking customers. Tulsa moved to dismiss Fine's petition for failure to state a claim on the grounds that it is immune from antitrust liability for the conduct at issue under the federal doctrine of state action immunity because its conduct is specifically authorized by state statute. Tulsa also sought dismissal because Fine failed to allege a relevant market and specific intent to monopolize.[1]

¶ 4 The trial court determined that the federal doctrine of state action immunity, as enunciated in *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) and its progeny, is incorporated into the Oklahoma Antitrust Reform Act. The trial court found that the doctrine immunized Tulsa from antitrust liability because its conduct was authorized by the Municipal Airports Act. Accordingly, the trial court dismissed Fine's petition.

¶ 5 The Court of Civil Appeals affirmed the trial court. It determined that Tulsa is immune from liability under the state antitrust law by virtue of the federal doctrine of state action immunity. It also affirmed the trial court on an independent ground that Tulsa's conduct was immunized because the operation of the airport parking facility is within the city's police powers. We previously granted Fine's petition for certiorari review.

## II. Standard of Review

¶ 6 The function of a dismissal motion is to test the law's support for a claim, not the sufficiency of the facts. *Zaharias v. Gammill,* 1992 OK 149, ¶ 6, 844 P.2d 137, 138. In this case, the trial court dismissed Fine's petition for want of any legal liability on the part of the Tulsa defendants. The

1. Because we resolve this appeal on other grounds, we do not address the relevant market and intent to monopolize issues.

order dismissing Fine's petition for failure to state a claim upon which relief may be granted is reviewed *de novo*. *Lockhart v. Loosen*, 1997 OK 103, ¶ 4, 943 P.2d 1074, 1077.

¶ 7 Further, the underlying questions presented on certiorari call for interpretation and construction of the Oklahoma Antitrust Reform Act and the Municipal Airports Act. Statutory construction presents a question of law that is subject to an appellate court's plenary, independent and nondeferential reexamination. *Arrow Tool & Gauge v. Mead*, 2000 OK 86, ¶ 6, 16 P.3d 1120, 1122–23.

### III. The Federal Antitrust State Action Immunity Doctrine

¶ 8 The Sherman Antitrust Act, 15 U.S.C. § 1, expresses our national policy against concerted activity that results in monopolies and restraints of trade.[2] However, in our federal system of dual sovereigns, federal law against anti-competitive conduct is not applied to governmental activities of the sovereign states. *Parker v. Brown, supra*, enunciated the doctrine of state action immunity from federal antitrust liability. Analyzing and interpreting the federal antitrust statute, *Parker* found no suggestion of congressional intent to restrain state action directed by state statute. 317 U.S. at 350–51, 63 S.Ct. at 313. Relying on fundamental principles of federalism and preemption, *Parker* concluded that the federal antitrust statute did not undertake to prohibit restraint on competition imposed by a sovereign state as an act of government. 317 U.S. at 352, 63 S.Ct. at 314. *See also*, Milton Handler, *Antitrust*, 78 Columbia L.R. 1363, 1374–80 (1978).

¶ 9 For purposes of federal antitrust law, a sovereign state can also immunize a municipality's conduct. However, to afford immunity to a municipality, the state must do something more than simply direct the municipality's conduct. *City of Lafay-*

*ette, La. v. Louisiana Power & Light Co.*, 435 U.S. 389, 414–15, 98 S.Ct. 1123, 1137–38, 55 L.Ed.2d 364 (1978). The state action immunity doctrine will protect a municipality's anti-competitive conduct from federal antitrust liability only where 1) there is a clearly expressed state policy to displace competition with municipal regulation and 2) the anti-competitive regulation is supervised by the state. *California Retail Liquor Dealers Assoc. v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980). The first prong of this two-prong analysis is satisfied if the restraint on competition is a foreseeable result of the activity authorized by state statute. *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 373, 111 S.Ct. 1344, 1350, 113 L.Ed.2d 382 (1991). The second prong is satisfied if the municipality actively supervises the regulation. *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 47, 105 S.Ct. 1713, 1720, 85 L.Ed.2d 24 (1985).

### IV. In the Oklahoma Antitrust Reform Act, 79 O.S.2001, §§ 201, *et seq.*, the Legislature has made unlawful those restraints on trade that prejudice the public.

¶ 10 Our constitution expresses this state's policy against monopolies and restraints of trade. It forcefully provides that "monopolies are contrary to the genius of a free government". Okla. Const., art. 2, § 32. It also mandates that the "Legislature shall define what is an unlawful combination, monopoly, trust, act, or agreement, in restraint of trade, and enact laws to punish persons engaged in" such unlawful activity. Okla. Const., art. 5, § 44.

¶ 11 Pursuant to that constitutional mandate, our earliest statutes prohibited conduct in restraint of trade.[3] In 1998, the

2. 15 U.S.C. § 1 reads:
Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction

thereof, shall be punished by fine not exceeding $10,000,000 if a corporation, or, if any other person, $350,000, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

3. The following language, similar to that used in the federal statute set out in footnote 2, has been a part of our statutes since statehood: "Every

Legislature enacted the most recent version of our antitrust statutes, the Oklahoma Antitrust Reform Act.[4] In addition to the general prohibition against restraints of trade in § 203(A), the Act specifically makes it unlawful for a person[5] 1) to monopolize or attempt to monopolize any part of trade or commerce in a relevant market in § 203(B), or 2) to unreasonably refuse access to an essential facility in § 203(C), or 3) to discriminate in the price of a commodity between different purchasers in § 204.[6]

¶ 12 Because nearly every regulation of trade and every agreement concerning trade constitutes a restraint of trade to some extent, the courts have rejected a literal reading of the antitrust statutes. *Teleco, Inc. v. Ford Industries, Inc.*, 1978 OK 159, ¶ 7, 587 P.2d 1360, 1362–63. Similar to the Sherman Antitrust Act, the state antitrust law has been interpreted to prohibit only those acts that unreasonably restrain trade or commerce. *Id.*

¶ 13 This Court has followed the interpretation of the federal antitrust statute in deciding what is an unreasonable restraint of trade under the Oklahoma antitrust statutes. *Id.* at ¶ 8, 1363. *See also, Beville v. Curry*, 2001 OK 1, ¶ 12, 39 P.3d 754, 759. Restraint of trade that has a pernicious effect on competition is conclusively presumed unreasonable and a *per se* violation of the antitrust statutes. *Teleco, Inc. v. Ford Industries, Inc.*, 1978 OK 159 at ¶ 8, 587 P.2d at 1363. Other restraints are tested by a rule of reason to determine if the activity unduly restricted competition and unreasonably prejudiced public interest. *Board of Regents v. National Collegiate Athletic Association*, 1977 OK 17, ¶ 15, 561 P.2d 499, 505–6. "The fundamental test of the reasonableness of an action, which, by its nature, re-

strains trade, is its effect on the public." *Krebsbach v. Henley*, 1986 OK 58, ¶ 29, 725 P.2d 852, 858.

## V. Municipalities are not immune from the Oklahoma Antitrust Reform Act, 79 O.S.2001, §§ 201, *et seq.*, under the federal doctrine of state action immunity.

¶ 14 While the Oklahoma Antitrust Reform Act is inapplicable to the state itself, the Act clearly expresses a legislative intent to subject municipalities to its proscriptive reach. The Act defines "Person" to include a "municipal corporation, including any public trust which has a municipal corporation as its beneficiary," and to exclude the "State of Oklahoma, its departments, and its administrative agencies," with some exceptions. 79 O.S. 2001, § 202(3).

¶ 15 The Act also commands that it be interpreted and applied consistent with the federal antitrust law. Title 79 O.S.2001, § 212 provides: "The provisions of this act shall be interpreted in a manner consistent with Federal Antitrust Law 15 U.S.C., Section 1 et seq. and the case law applicable thereto." Tulsa argues that § 212 compels the conclusion that the Legislature intended to adopt the federal doctrine of state action immunity and that it is immune from state antitrust liability under the circumstances of this case. We disagree.

¶ 16 *Parker* concluded that the federal antitrust statute did not undertake to prohibit restraint on competition imposed by a sovereign state as an act of government. 317 U.S. at 352, 63 S.Ct. at 314. *Parker* fashioned the state action immunity doctrine to protect the sovereign states' power to

---

act, agreement, contract, or combination in the form of a trust, or otherwise, or conspiracy in restraint of trade or commerce within this state is hereby declared to be against public policy and illegal." Laws of 1907–8, p. 750, Complied Laws of 1909, § 8800, now codified at 79 O.S.2001, § 203(A).

4. 1998 Okla.Sess.Laws, ch. 356, created the Oklahoma Antitrust Reform Act and repealed the existing antitrust statutes.

5. The state antitrust statutes expressly prohibit every *unilateral* "act" of anti-competitive conduct. However, restraint of trade or commerce imposed *unilaterally* by government officials is not a violation of the federal antitrust statute which requires an element of concerted action. *Fisher v. City of Berkeley*, 475 U.S. 260, 266–67, 106 S.Ct. 1045, 1049, 89 L.Ed.2d 206 (1986).

6. The constitution also prohibits discrimination in the sale of commodities. Okla. Const., art. 9, § 45.

regulate commerce with respect to matters of state concern not preempted by Congress. 317 U.S. at 359–60, 63 S.Ct. at 317–18. Under the *Parker* doctrine, a municipality may also be clothed with the state's immunity from federal antitrust liability where the state has delegated its regulatory power to the municipality. *City of Lafayette, La. v. Louisiana Power & Light Co.*, 435 U.S. at 414, 98 S.Ct. at 1137. Application of the *Parker* doctrine to a municipality when it is carrying out state policy allows the states to use their municipalities to administer state regulatory policies free from federal antitrust liability. *Id.*, 435 U.S. at 415–16 and 98 S.Ct. at 1138.

¶ 17 The *Parker* immunity doctrine rests on principles of federalism and comity in the realm of trade regulation as a means of protecting the delicate relationship between the federal and state governments, both of which are sovereign. 317 U.S. at 359–60, 63 S.Ct. at 317–18. The principles of federalism that govern the relationship between the two sovereigns, the federal and state governments, do not apply to the relationship between a state and a municipality acting pursuant to state law.

¶ 18 In the relationship between Oklahoma and its municipalities, the state is the sovereign and the municipality is a political subdivision of the state.[7] The state delegates power to the municipality and the municipality exercises that power subject to the control of the state. *City of Sapulpa v. Land*, 1924 OK 92, 101 Okla. 22, 223 P. 640, 646. The principles of federalism supporting the *Parker* doctrine are meaningless in an analysis of municipal liability under the Oklahoma Antitrust Reform Act.

¶ 19 We agree with the reasoning expressed by the Wisconsin Supreme Court in *Town of Hallie v. City of Chippewa Falls*, 105 Wis.2d 533, 314 N.W.2d 321 (1982).[8] In rejecting the federal state action immunity doctrine, the Wisconsin court said:

> ... The *Parker* decision rested on general principles of federalism involving the relationship of the federal government to the sovereign states, and on the specific constitutional limits on federal power contained

---

7. Pursuant to the Oklahoma Constitution, the Legislature must provide for the incorporation and organization of cities and towns by general laws (art. 18, § 1); municipalities are subject to the general laws of this state (art.18, §§ 2 and 3,); and, municipalities may engage in any business which the municipality has the power to franchise (art. 18, § 6). Under these provisions, municipalities are corporate bodies capable of many acts of private corporations as well as acts of government. *City of Blackwell v. Lee*, 1936 OK 767, ¶ 5, 62 P.2d 1219, 1220.

In *City of Lafayette, La. v. Louisiana Power & Light Co., supra.*, the city argued that its status as a municipality automatically afforded it state action immunity. The U.S. Supreme Court refused to afford the city the same deference it afforded the states, explaining that cities are not sovereign and they are not free to pursue their parochial interests via anti-competitive conduct. *City of Lafayette, La. v. Louisiana Power & Light Co.*, 435 U.S. at 411–13, 98 S.Ct. at 1136.

8. For the most part, the decisions of other sister jurisdictions considering application of the *Parker* doctrine are inapposite because of their respective state statutes. Three states have rejected the federal state action immunity doctrine. Massachusetts did so because its antitrust statutes explicitly provided that the law did not apply to any activities subject to regulation or supervision by state agencies, *Monsanto Co. v.* *Dept. of Public Utilities*, 412 Mass. 25, 586 N.E.2d 982 (1992). New Jersey did so because its antitrust statutes specified that the law shall not apply to any activity directed or authorized or permitted by any conflicting or inconsistent statute, *Fanelli v. City of Trenton*, 135 N.J. 582, 641 A.2d 541 (1994). New York, at least by implication, determined that its state antitrust statutes did not provide for state action immunity comparable to the federal doctrine. *Capital Telephone v. New York Telephone*, 146 A.D.2d 312, 540 N.Y.S.2d 895 (3 Dept.1989). However, three states have followed the federal state action immunity analysis. Louisiana did so because its antitrust statute did not expressly include or exclude municipalities, *Reppond v. City of Denham Springs*, 572 So.2d 224 (La.App. 1 Cir.1990). Colorado did so because its antitrust statute specifically provided that persons and activities immune from federal law are immune from state law, *City of Colorado Springs v. Mountain View Electric Association, Inc.*, 925 P.2d 1378, 1387 (Colo.App.1996). Illinois held that an airport authority is protected by the state action immunity doctrine in *Du Page Aviation Corp. v. Du Page Airport Authority*, 229 Ill.App.3d 793, 594 N.E.2d 1334, 171 Ill.Dec. 814 (1992), but subsequently decided that its antitrust statutes expressly provide that no provision of the antitrust statutes shall be construed to make activities of a unit of local government illegal, *Alarm Detection Systems, Inc. v. Village of Hinsdale*, 326 Ill.App.3d 372, 761 N.E.2d 782, 260 Ill.Dec. 599 (2001).

in the tenth and eleventh amendments. (Footnote omitted.) These principles are not present in this case. The relationship between the federal government and the states is not parallel to the relationship between the state government and the cities. Cities are creatures of the state, derive their power from it, and are not recognized as independent sovereigns. (Citation omitted.) The concern in *Parker* and recent United States Supreme Court cases applying it (Footnote omitted.) has to do with potential conflicts between the laws of two different sovereigns—federal and state governments.

By contrast, the present case involves a conflict between the state laws dealing with municipalities and the state antitrust law. The rationale behind the *Parker* exemption is not applicable to this type of case....

314 N.W.2d at 324.

 ¶20 The Oklahoma Antitrust Reform Act expressly includes municipalities in the definition of "person" subject to its provisions in § 202(3). Nevertheless, Tulsa argues that § 212, which requires that our antitrust statutes be interpreted consistent with federal law, implicitly adopts the federal doctrine of state action immunity as applied to municipalities. We disagree. We will not apply a rule of construction to render meaningless express provisions of the Act, such as the definition of "person" in § 202(3). Accordingly, we reject Tulsa's argument. We conclude that municipalities are not immune from the Oklahoma Antitrust Reform Act under the federal doctrine of state action immunity.

VI. **The Municipal Airports Act, 3 O.S. 2001, §§ 65.1, *et seq.*, authorizes municipalities to operate and regulate parking facilities and fix the rates for the parking services at municipal airports for the benefit of the public and as a public necessity without regard to the anti-competitive effects.**

¶21 More than half a century ago, the Legislature authorized municipalities to plan, develop, and operate public airports by en-

acting the Municipal Airports Act.[9] In comprehensive terms, the Act authorizes every municipality to plan, develop, construct, maintain, equip, operate, regulate, protect and police public airports, "including the construction, installation, equipment, maintenance and operation at such airports of buildings and other facilities for the servicing of aircraft or for the comfort and accommodation of air travelers". 3 O.S.2001, § 65.2(a). The Act recognizes that air travel is imbued with public purpose and airports are a public necessity by declaring that the exercise of "powers herein granted to municipalities" are "public and governmental functions, exercised for a public purpose, and matters of public necessity". 3 O.S.2001, § 65.16.

¶22 One of the powers the Act grants to municipalities is the power to regulate airport parking. The Act provides that in making airport facilities and services available, a "municipality may establish the terms and conditions and fix the charges, rentals or fees for the privileges or services, which shall be reasonable and uniform for the same class of privilege or service and shall be established with due regard for the property and improvements used and the expenses of operation to the municipality." 3 O.S.2001, § 65.5(a)(3). It also provides in specific terms that a municipality may adopt such regulations as it deems necessary for the management, government and use of the municipal airport, 3 O.S.2001, § 65.8(a).

 ¶23 In enacting the Municipal Airports Act, the Legislature vested municipalities with broad regulatory and administrative powers in operating public airports. Among those powers, the Act authorizes municipalities to establish the terms and conditions and fix the charges for airport facilities and services. It follows logically that such regulation may have anti-competitive effects. In other words, the Act allows a municipality to operate parking facilities at its public airport and to fix reasonable rates for the parking services without regard to the anti-competitive effects.

9. 1947 Okla. Sess. Laws, p. 22, is the original enactment.

**VII. Because the Legislature intended to allow a municipality to operate parking facilities at a municipal airport as an arm of the state for the public good, a municipality may, like the state itself, fix the rate for airport parking service even though it may have anti-competitive effects.**

¶ 24 The overriding issue in this case is the reconciliation of two ostensibly conflicting enactments of a single sovereign—the State of Oklahoma. The Oklahoma Antitrust Reform Act makes it unlawful for a person, including a municipality, to monopolize or attempt to monopolize any part of trade or commerce in a relevant market. 79 O.S. 2001, § 203(B). On the other hand, the Municipal Airports Act allows a municipality to operate and regulate parking facilities and fix the rate for parking services at the municipal airport without regard to the anti-competitive effects. 3 O.S.2001, § 65.5(a)(3). In resolving this apparent inconsistency between a state law dealing with municipalities and the state antitrust law, the job quite simply is to ascertain and give effect to legislative intent. *City of Durant v. Cicio*, 2002 OK 52, ¶ 13, 50 P.3d 218, 221. *See also*, Milton Handler, *Antitrust*, 78 Columbia L.R. 1363,1378 (1978).

¶ 25 In resolving this statutory conflict, we are mindful that the exercise of municipal authority is subject to the general laws of the state. *City of Sapulpa v. Land*, 223 P. at 646. Where municipal conduct is challenged under a general statute, the statutory grant of municipal authority must be strictly construed in favor of the general statute. *Y & Y Cab Service v. City of Oklahoma City*, 1933 OK 547, 167 Okla. 134, 28 P.2d 551, 552–53. Absent an express exemption, a municipality's conduct cannot be exempted from the proscriptive reach of a general statute unless the express provisions of a conflicting state statute permits or authorizes the municipality to engage in conduct that is inconsistent with or contrary to the general statute.

¶ 26 The Oklahoma Antitrust Reform Act is a general statute of statewide concern that uniformly applies to every municipality. It is designed to prohibit anti-competitive conduct that is harmful to the public. *Board of Regents v. National Collegiate Athletic Association, supra.*, and *Krebsbach v. Henley, supra.* Accordingly, unless it can be said that the Municipal Airport Act authorizes Tulsa to fix parking rates for the good of the public, Tulsa has, if Fine's allegations are proved, violated Oklahoma's antitrust law.

¶ 27 Prior to enactment of the Municipal Airports Act, municipalities with 2000 inhabitants had statutory authority to engage in the operation of an airport.[10] We viewed the operation of a municipal airport as a proprietary function.[11] In enacting the Municipal Airports Act, the Legislature au-

---

10. 1931 Oklahoma Compiled Statutes, § 6350.

11. *City of Blackwell v. Lee*, 1936 OK 767, 178 Okla. 338, 62 P.2d 1219. A 1958 amendment to Tulsa's municipal charter created the Airport Authority to operate the airport *as a financially independent utility of the city. City of Tulsa by and through Tulsa Airport Authority v. Air Tulsa, Inc.*, 1992 OK 146, ¶ 2 and ¶ 14, 851 P.2d 519, 520 and 522. This perception of a municipal airport as a *proprietary function* was changed in the 1947 Municipal Airports Act when the Legislature, in § 65.16, characterized the operation of a municipal airport as a *governmental function*, finding public purpose and public necessity.

Generally, all functions of a municipality are public in nature whether the municipality acts in a proprietary capacity or a governmental capacity. When a municipality acts in a proprietary capacity, it does so as a private corporation for its own purposes and benefits separate from the duties and powers imposed upon by the state, however, when a municipality acts in a govern-

mental capacity, it does so as an arm of the state for the convenient administration of the government within territorial bounds of the municipality, for the public good on behalf of the state rather than for itself. *Public Service Co. of Oklahoma v. City of Tulsa*, 1935 OK 904, 174 Okla. 58, 50 P.2d 166, *Syllabus*, No. 2.

Fine does not challenge the Legislature's "public purpose and public necessity" perception of municipal airports. Even though the question might ultimately become a judicial one, what constitutes a public purpose and public necessity is a legislative matter. *In re Initiative Petition No. 319*, 1984 OK 23, ¶ 14, 682 P.2d 222, 224. Where there is no allegation or evidence challenging the legislative characterization of the public nature of a particular subject matter, the courts will not interfere with a legislative declaration of public purposes. *Democratic Party of Oklahoma v. Estep*, 1982 OK 106, ¶ 14, 652 P.2d 271, 276, footnote 19.

thorized municipalities to plan, develop and operate public airports and declared these activities to be "public and governmental functions". 3 O.S.2001, § 65.16. It also granted municipalities various powers, including the power to "fix the charges, rentals or fees for the privileges or services" at a municipal airport, 3 O.S.2001, § 65.5(a)(3), and declared these powers to be exercised "for a public purpose, and matters of public necessity". 3 O.S.2001, § 65.16. A reading of these provisions leads us to but a single conclusion—When a municipality operates an airport pursuant to the Municipal Airports Act, it is acting in a governmental capacity as an arm of the state to meet a public need and not solely for its own benefit.

¶ 28 Because the Legislature intended to allow a municipality to operate parking facilities at a municipal airport as an arm of the state for the public good, a municipality may, like the state itself, fix the rate for the airport parking service even though it may have anti-competitive effects.[12] Accordingly, we determine that Tulsa's operation of an airport parking facility as authorized by the Municipal Airports Act, 3 O.S.2001, §§ 65.1, *et seq.* is not subject to the Oklahoma Antitrust Reform Act, 79 O.S.2001, §§ 201, *et seq.*

### VIII. Conclusion

¶ 29 The Oklahoma Antitrust Reform Act, while expressly excluding the state from antitrust liability, clearly subjects municipalities to liability for anti-competitive conduct. Municipalities are not immune from the Act under the federal doctrine of state action immunity. The Municipal Airports Act authorizes municipalities to operate and regulate parking facilities and fix the rates for the parking services at municipal airports for the benefit of the public and as a public necessity. Because the Legislature intended to allow a municipality to operate parking facilities at a municipal airport as an arm of the state for the public good, a municipality may, like the state itself, fix the rate for airport parking service even though it may have anti-competitive effects. We hold that the district court did not err when it dismissed Fine's petition for want of any legal liability on the part of Tulsa under the state antitrust statutes, even though the district court based its dismissal on incorrect legal conclusions.[13]

**CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS VACATED; DISMISSAL ORDER OF THE DISTRICT COURT AFFIRMED.**

WATT, C.J., OPALA, V.C.J., and LAVENDER, HARGRAVE, SUMMERS, and WINCHESTER, JJ., concur.

HODGES, J., concurs in result.

KAUGER, J., recused.

12. The Court of Civil Appeals also created a sweeping immunity from antitrust liability for a municipality if the challenged conduct is within the "police power." Police power is an inherent attribute of sovereignty possessed by every state. *State ex rel. Roth v. Waterfield,* 1933 OK 546, 29 P.2d 24. The police power pertains to such rules and regulations relating to *personal and property rights* as affect the public health, safety and welfare. 16A C.J.S. Constitutional Law § 432. Tulsa is not exercising municipal "police power" when it fixes the price of airport parking because such regulation does not affect personal or property rights. The case relied on by the Court of Civil Appeals, *Ex Parte Houston,* 1950 OK CR 93, 93 Okla.Crim. 26, 224 P.2d 281, does not support the proposition that fixing the price of parking at a municipal airport is an exercise of police power.

13. A trial court will be affirmed on appeal where it reaches the correct result although its decision is based upon erroneous legal conclusions. *Shelley v. Kiwash Electric Coop.,* 1996 OK 44, ¶ 16, 914 P.2d 669, 674.