2014 OK CIV APP 48

RURAL WATER, Sewer And Solid Waste Management District No. 1, Logan County, Oklahoma, an agency and legally constituted authority of the State Of Oklahoma, Plaintiff/Appellant,

v.

CITY OF GUTHRIE, an Oklahoma Municipality and The Guthrie Public Works Authority, a public trust, Defendants/Appellees.

No. 109575.

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 25, 2013.

Certiorari Denied May 12, 2014.

Steven M. Harris, Michael D. Davis, S. Max Harris, DOYLE HARRIS DAVIS & HAUGHEY, Tulsa, Oklahoma, for Plaintiff/Appellant.

Andrew W. Lester, Johnny G. Beech, Carrie L. Williams, LESTER, LOVING & DAVIES, P.C., Edmond, Oklahoma, for Defendants/Appellees.

ROBERT D. BELL, Judge.

¶ 1 Plaintiff/Appellant, Rural Water, Sewer and Solid Waste Management District No. 1, Logan County, Oklahoma (Logan–1), appeals from the trial court's grant of summary judgment to Defendants/Appellees, the City of Guthrie and the Guthrie Public Works Authority (collectively, Guthrie), in this action to compel Guthrie to sell water to Logan–1. For the reasons set forth below, we affirm.

¶ 2 Logan–1 is an Oklahoma rural water district and agency of the State of Oklahoma. Guthrie owns or controls a water treatment plant and water distribution facilities. Logan–1 contended Guthrie has surplus treated water which it has wrongfully and repeatedly refused to sell. Thus, Logan–1 filed the instant lawsuit seeking a judicial order to

compel Guthrie to sell Logan–1 its surplus water.

¶ 3 Both sides moved for summary judgment. Logan–1 argued Guthrie should be forced to sell its surplus water pursuant to 82 O.S.2011 § 105.21 and alleged Guthrie wrongfully denied Logan–1 access to an essential facility in violation of the Oklahoma Antitrust Reform Act, 79 O.S.2011 § 201 *et seq.* Both theories of recovery sought the compelled sale of water by Guthrie to Logan–1. Guthrie countered: § 105.21 applies only to stream water; Guthrie has discretion under 11 O.S.2011 § 37–120 to deny Logan–1's requests; pursuant to 82 O.S.2011 § 105.9, Logan–1 was required to first seek a permit from the Oklahoma Water Resources Board (OWRB) before filing suit; and Guthrie is exempt from antitrust liability pursuant to *Fine Airport Parking, Inc. v. City of Tulsa,* 2003 OK 27, 71 P.3d 5.

¶ 4 The trial court granted summary judgment to Guthrie. Specifically, the court held § 105.21 applies only to stream water and does not cover treated water for municipalities. It also held Logan–1 cannot show under the antitrust laws that it lacks suitable, available alternatives to purchase water. From said judgment, Logan–1 appeals.[1] This matter stands submitted for accelerated appellate review without appellate briefs on the trial court record pursuant to Rule 13(h), *Rules for District Courts,* 12 O.S.2011, Ch. 2, App., and Rule 1.36, *Oklahoma Supreme Court Rules,* 12 O.S.2011, Ch. 15, App. 1. Pursuant to the parties' joint request, this appeal was stayed from January 24, 2013, through September 25, 2013, for unsuccessful settlement negotiations.

¶ 5 This Court's standard of review of a trial court's grant of summary judgment is *de novo. Hoyt v. Paul R. Miller, M.D., Inc.,* 1996 OK 80, ¶ 2, 921 P.2d 350, 351–2. Summary judgment is proper when the evidentiary materials "establish that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Shelley v. Kiwash Elec. Co-op.,* 1996 OK 44, ¶ 15, 914 P.2d 669, 674.

¶ 6 We first address Logan–1's argument that Guthrie was required by 82 O.S. § 105.21 to sell its surplus water to Logan–1. Logan–1 also urges the same statutory provision authorized it to seek judicial intervention without first trying to obtain relief from the OWRB. Section 105.21 states:

> The owner of any works for the storage, diversion or carriage of water, which contain water in excess of his needs for irrigation or other beneficial use for which it has been appropriated, shall be required to deliver such surplus, at reasonable rates for storage or carriage, or both, as the case may be, to the parties entitled to the use of the water for beneficial purposes. In case of the refusal of such owner to deliver any such surplus water at reasonable rates as determined by the Board, he may be compelled to do so by the district court for the county in which the surplus water is to be used.

Guthrie asserts § 105.21 does not apply to the treated water in its system and, pursuant to 11 O.S. § 37–120, it has discretion to determine whether, when, to whom, and under what conditions it chooses to sell water.[2]

¶ 7 Section 105.21 is part of what is referred to as the "stream water use statutes," 82 O.S. § 105.1–105.32. *Messer–Bowers Co. v. State ex rel. Okla. Water Res. Bd.,*

---

1. Guthrie also filed a counter-appeal urging "another basis for affirming the judgment of the trial court with respect to Count I." This argument is addressed in Note 4, *infra.*

2. Section 37–120 addresses a municipality's ability to extend water lines and sell water outside its corporate city limits. Among other things, the statute provides:
   All water so sold and furnished to persons, firms, corporations and other municipalities beyond and without the corporate limits of the municipality so selling and furnishing the same shall be sold and furnished only under written contracts upon such terms and conditions as may be agreed upon by negotiation between the municipality and such persons, firms, corporations or other municipalities. Nothing herein contained shall be construed to impose any duty or obligation upon any municipality to sell or furnish water to any person, firm, corporation or municipality beyond its corporate limits except as the municipality may expressly undertake by the terms of the written contract.

2000 OK 54, ¶ 6, 8 P.3d 877, 879.[3] As Guthrie maintains, and the trial court properly held, § 105.21 applies only to "stream water" and not to water that has been appropriated by or is in treatment facilities of a municipality. Further, if the water at issue was governed by the stream water use statutes, Logan–1 would have been required by 82 O.S. 2011 § 105.9 to apply for and obtain a permit from the OWRB before being allowed to take the same. We find no error.[4]

¶ 8 With respect to Logan–1's second proposition, we hold Guthrie's waterworks are not subject to the Oklahoma Antitrust Reform Act. An analogous issue was addressed in *Fine Airport Parking, Inc. v. City of Tulsa,* 2003 OK 27, 71 P.3d 5. There, an off-airport parking operator sued the City of Tulsa and its airport public authorities, alleging their price-setting practices violated state antitrust laws. The Court began its analysis by noting the "two ostensibly conflicting enactments" of the Antitrust Reform Act and the Municipal Airports Act, 3 O.S. § 61 et seq. *Fine* at ¶ 24, 71 P.3d at 13. The "Antitrust Reform Act makes it unlawful for a person, including a municipality, to monopolize or attempt to monopolize any part of trade or commerce in a relevant market," while "the Municipal Airports Act allows a municipality to operate and regulate parking facilities and fix the rate for parking services at the municipal airport.... " *Id.*

¶ 9 After discussing general rules for resolving statutory conflicts and the purpose of the antitrust law, the Court continued:

> In enacting the Municipal Airports Act, the Legislature authorized municipalities to plan, develop and operate public airports and declared these activities to be "public and governmental functions." It also granted municipalities various powers, including the power to "fix the charges, rentals or fees for the privileges or services" at a municipal airport, and declared these powers to be exercised "for a public purpose, and matters of public necessity." A

reading of these provisions leads us to but a single conclusion—When a municipality operates an airport pursuant to the Municipal Airports Act, it is acting in a governmental capacity as an arm of the state to meet a public need and not solely for its own benefit.

*Id.* at ¶ 27, 71 P.3d at 13–4 (citations omitted). The Court concluded "that Tulsa's operation of an airport parking facility as authorized by the Municipal Airports Act ... is not subject to the Oklahoma Antitrust Reform Act.... " *Id.* at ¶ 28, 71 P.3d at 14.

¶ 10 Turning to the present case, there are multiple constitutional and statutory provisions authorizing municipalities to operate and regulate waterworks. *See,* e.g., Okla. Const. art. 18, § 5(a) & (b) (governing municipal franchises); Okla. Const. art. 18, § 6 (granting broad authority for municipalities to engage in business); 11 O.S.2011 § 22–104 (authorizing municipalities to engage in businesses, including water-works); 11 O.S.2011 § 37–101 et seq. (governing municipal waterworks and water supplies). Title 11 O.S.2011 § 37–121 specifically states municipalities:

> may enter into a contract or lease program *as a governmental function* for the purpose of buying, selling, or distributing water ... inside or outside of the municipal limits.... All said facilities, contracts, leases, activities, programs, and performance thereof, on behalf of the municipality, *shall be governmental in nature* (emphasis added).

¶ 11 Applying the rationale of *Fine,* we hold that when a municipality operates its waterworks pursuant to the above authority, "it is acting in a governmental capacity as an arm of the state to meet a public need." *Fine,* 2003 OK 27 at ¶ 27, 71 P.3d at 14. Therefore, Guthrie's operation of its waterworks as authorized by Oklahoma's waterworks statutes is not subject to the Oklahoma Antitrust Reform Act.

---

3. Although *Messer–Bowers* referenced the stream water use statutes as "Okla. Stat. Tit. §§ 105.1–105.18 (1991 & Supp.1999)," the later-enacted §§ 105.19–105.32 appear within the same statutory provisions and under the same general "STREAM WATER USE" heading.

4. Because we hold the stream water use statutes are inapplicable, we reject Guthrie's proposition, raised in its counter petition in error, that Logan failed to properly exhaust its administrative remedies because it did not first seek a permit from the OWRB.

¶ 12 On the basis of the foregoing and upon *de novo* review, we conclude there exists no issue of disputed material facts and Guthrie is entitled to judgment as a matter of law. The judgment of the trial court is therefore affirmed.

¶ 13 AFFIRMED.

BUETTNER, P.J., and JOPLIN, C.J., concur.