OSCN Found Document:RURAL WATER, SEWER AND SOLID WASTE MGMT. DIST. NO. 1 v. CITY OF GUTHRIE

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 RURAL WATER, SEWER AND SOLID WASTE MGMT. DIST. NO. 1 v. CITY OF GUTHRIE
2014 OK CIV APP 48
325 P.3d 1
Case Number: 109575
Decided: 10/25/2013
Mandate Issued: 05/08/2014
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2014 OK CIV APP 48, 325 P.3d 1

RURAL WATER, SEWER AND SOLID WASTE MANAGEMENT DISTRICT NO. 1, 
LOGAN COUNTY, OKLAHOMA, an agency and legally constituted authority of the STATE 
OF OKLAHOMA, Plaintiff/Appellant,
v.
CITY OF GUTHRIE, an Oklahoma 
Municipality and THE GUTHRIE PUBLIC WORKS AUTHORITY, a public trust, 
Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF
LOGAN COUNTY, OKLAHOMA
HONORABLE PHILLIP C. CORLEY, JUDGE

AFFIRMED

Steven M. Harris, Michael D. Davis, S. Max Harris, DOYLE HARRIS DAVIS & 
HAUGHEY, Tulsa, Oklahoma, for Plaintiff/Appellant,
Andrew W. Lester, Johnny 
G. Beech, Carrie L. Williams, LESTER, LOVING & DAVIES, P.C., Edmond, 
Oklahoma, for Defendants/Appellees.


ROBERT D. BELL, JUDGE:
¶1 Plaintiff/Appellant, Rural Water, Sewer and Solid Waste Management 
District No. 1, Logan County, Oklahoma (Logan-1), appeals from the trial court's 
grant of summary judgment to Defendants/Appellees, the City of Guthrie and the 
Guthrie Public Works Authority (collectively, Guthrie), in this action to compel 
Guthrie to sell water to Logan-1. For the reasons set forth below, we 
affirm.
¶2 Logan-1 is an Oklahoma rural water district and agency of the State of 
Oklahoma. Guthrie owns or controls a water treatment plant and water 
distribution facilities. Logan-1 contended Guthrie has surplus treated water 
which it has wrongfully and repeatedly refused to sell. Thus, Logan-1 filed the 
instant lawsuit seeking a judicial order to compel Guthrie to sell Logan-1 its 
surplus water.
¶3 Both sides moved for summary judgment. Logan-1 argued Guthrie should be 
forced to sell its surplus water pursuant to 82 O.S. 2011 §105.21 and alleged 
Guthrie wrongfully denied Logan-1 access to an essential facility in violation 
of the Oklahoma Antitrust Reform Act, 79 O.S. 2011 §201 et seq. 
Both theories of recovery sought the compelled sale of water by Guthrie to 
Logan-1. Guthrie countered: §105.21 applies only to stream water; Guthrie has 
discretion under 11 O.S. 2011 
§37-120 to deny Logan-1's requests; pursuant to 82 O.S. 2011 §105.9, Logan-1 was 
required to first seek a permit from the Oklahoma Water Resources Board (OWRB) 
before filing suit; and Guthrie is exempt from antitrust liability pursuant to 
Fine Airport Parking, Inc. v. City of Tulsa, 2003 OK 27, 71 P.3d 5.
¶4 The trial court granted summary judgment to Guthrie. Specifically, the 
court held §105.21 applies only to stream water and does not cover treated water 
for municipalities. It also held Logan-1 cannot show under the antitrust laws 
that it lacks suitable, available alternatives to purchase water. From said 
judgment, Logan-1 appeals.[1] This matter stands submitted for accelerated 
appellate review without appellate briefs on the trial court record pursuant to 
Rule 13(h), Rules for District Courts, 12 O.S. 2011, Ch. 2, App., and 
Rule 1.36, Oklahoma Supreme Court Rules, 12 O.S. 2011, Ch. 15, App. 1. 
Pursuant to the parties' joint request, this appeal was stayed from January 24, 
2013, through September 25, 2013, for unsuccessful settlement negotiations.
¶5 This Court's standard of review of a trial court's grant of summary 
judgment is de novo. Hoyt v. Paul R. Miller, M.D., Inc., 1996 OK 80, ¶2, 921 P.2d 350, 351-2. Summary judgment 
is proper when the evidentiary materials "establish that there is no genuine 
issue as to any material fact, and that the moving party is entitled to judgment 
as a matter of law." Shelley v. Kiwash Elec. Co-op., 1996 OK 44, ¶15, 914 P.2d 669, 674.
¶6 We first address Logan-1's argument that Guthrie was required by 82 O.S. §105.21 to sell its surplus 
water to Logan-1. Logan-1 also urges the same statutory provision authorized it 
to seek judicial intervention without first trying to obtain relief from the 
OWRB. Section 105.21 states:

 
 The owner of any works for the storage, diversion or carriage of water, 
 which contain water in excess of his needs for irrigation or other 
 beneficial use for which it has been appropriated, shall be required to 
 deliver such surplus, at reasonable rates for storage or carriage, or both, 
 as the case may be, to the parties entitled to the use of the water for 
 beneficial purposes. In case of the refusal of such owner to deliver any 
 such surplus water at reasonable rates as determined by the Board, he may be 
 compelled to do so by the district court for the county in which the surplus 
 water is to be used.
Guthrie asserts §105.21 does not apply to the treated water in its system 
and, pursuant to 11 O.S. §37-120, 
it has discretion to determine whether, when, to whom, and under what conditions 
it chooses to sell water.[2]
¶7 Section 105.21 is part of what is referred to as the "stream water use 
statutes," 82 O.S. §105.1 - 
105.32. Messer-Bowers Co. v. State ex rel. Okla. Water Res. Bd., 2000 OK 54, ¶6, 8 P.3d 877, 879.[3] As Guthrie maintains, and the 
trial court properly held, §105.21 applies only to "stream water" and not to 
water that has been appropriated by or is in treatment facilities of a 
municipality. Further, if the water at issue was governed by the stream water 
use statutes, Logan-1 would have been required by 82 O.S. 2011 §105.9 to apply for and 
obtain a permit from the OWRB before being allowed to take the same. We find no 
error.[4]
¶8 With respect to Logan-1's second proposition, we hold Guthrie's waterworks 
are not subject to the Oklahoma Antitrust Reform Act. An analogous issue was 
addressed in Fine Airport Parking, Inc. v. City of Tulsa, 2003 OK 27, 71 P.3d 5. There, an off-airport 
parking operator sued the City of Tulsa and its airport public authorities, 
alleging their price-setting practices violated state antitrust laws. The Court 
began its analysis by noting the "two ostensibly conflicting enactments" of the 
Antitrust Reform Act and the Municipal Airports Act, 3 O.S. §61 et seq. 
Fine at ¶24, 71 P.3d at 13. The "Antitrust Reform Act makes it unlawful 
for a person, including a municipality, to monopolize or attempt to monopolize 
any part of trade or commerce in a relevant market," while "the Municipal 
Airports Act allows a municipality to operate and regulate parking facilities 
and fix the rate for parking services at the municipal airport . . . ." 
Id.
 
¶9 After discussing general rules for resolving statutory conflicts and the 
purpose of the antitrust law, the Court continued:

 
 In enacting the Municipal Airports Act, the Legislature authorized 
 municipalities to plan, develop and operate public airports and declared 
 these activities to be "public and governmental functions." It also granted 
 municipalities various powers, including the power to "fix the charges, 
 rentals or fees for the privileges or services" at a municipal airport, and 
 declared these powers to be exercised "for a public purpose, and matters of 
 public necessity." A reading of these provisions leads us to but a single 
 conclusion--When a municipality operates an airport pursuant to the 
 Municipal Airports Act, it is acting in a governmental capacity as an arm of 
 the state to meet a public need and not solely for its own 
 benefit.
Id. at ¶27, 71 P.3d at 13-4 (citations omitted). The Court concluded 
"that Tulsa's operation of an airport parking facility as authorized by the 
Municipal Airports Act . . . is not subject to the Oklahoma Antitrust Reform Act 
. . . ." Id. at ¶28, 71 P.3d at 14.
¶10 Turning to the present case, there are multiple constitutional and 
statutory provisions authorizing municipalities to operate and regulate 
waterworks. See, e.g., Okla. Const. art. 18, §5(a) & (b) (governing 
municipal franchises); Okla. Const. art. 18, §6 (granting broad authority for 
municipalities to engage in business); 11 O.S. 2011 §22-104 (authorizing 
municipalities to engage in businesses, including water-works); 11 O.S. 2011 §37-101 et seq. 
(governing municipal waterworks and water supplies). Title 11 O.S. 2011 §37-121 specifically 
states municipalities:

 
 may enter into a contract or lease program as a governmental 
 function for the purpose of buying, selling, or distributing water . . . 
 inside or outside of the municipal limits . . . . All said facilities, 
 contracts, leases, activities, programs, and performance thereof, on behalf 
 of the municipality, shall be governmental in nature (emphasis 
 added).
¶11 Applying the rationale of Fine, we hold that when a municipality 
operates its waterworks pursuant to the above authority, "it is acting in a 
governmental capacity as an arm of the state to meet a public need." 
Fine, 2003 OK 27 at ¶27, 
71 P.3d at 14. Therefore, Guthrie's operation of its waterworks as authorized by 
Oklahoma's waterworks statutes is not subject to the Oklahoma Antitrust Reform 
Act.
¶12 On the basis of the foregoing and upon de novo review, we conclude 
there exists no issue of disputed material facts and Guthrie is entitled to 
judgment as a matter of law. The judgment of the trial court is therefore 
affirmed.

¶13 AFFIRMED.

BUETTNER, P.J., and JOPLIN, C.J., concur.

FOOTNOTES

[1] Guthrie 
also filed a counter-appeal urging "another basis for affirming the judgment of 
the trial court with respect to Count I." This argument is addressed in Note 4, 
infra.

[2] Section 
37-120 addresses a municipality's ability to extend water lines and sell water 
outside its corporate city limits. Among other things, the statute provides:
All water so sold and furnished to persons, firms, corporations and other 
municipalities beyond and without the corporate limits of the municipality so 
selling and furnishing the same shall be sold and furnished only under written 
contracts upon such terms and conditions as may be agreed upon by negotiation 
between the municipality and such persons, firms, corporations or other 
municipalities. Nothing herein contained shall be construed to impose any duty 
or obligation upon any municipality to sell or furnish water to any person, 
firm, corporation or municipality beyond its corporate limits except as the 
municipality may expressly undertake by the terms of the written 
contract.

[3] 
Although Messer-Bowers referenced the stream water use statutes as "Okla. 
Stat. Tit. §§ 105.1-105.18 (1991 & Supp.1999)," the later-enacted §§105.19 - 
105.32 appear within the same statutory provisions and under the same general 
"STREAM WATER USE" heading.

[4] Because 
we hold the stream water use statutes are inapplicable, we reject Guthrie's 
proposition, raised in its counter petition in error, that Logan failed to 
properly exhaust its administrative remedies because it did not first seek a 
permit from the OWRB.
 





 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Supreme Court Cases Cite
Name
Level 2003 OK 27, 71 P.3d 5, FINE AIRPORT PARKING, INC. v. CITY OF TULSA
Discussed at Length 1996 OK 44, 914 P.2d 669, 67 OBJ 1190, Shelley v. Kiwash Elec. Cooperative, Inc.
Discussed 1996 OK 80, 921 P.2d 350, 67 OBJ 2308, Hoyt v. Paul R. Miller, M.D., Inc.
Discussed 2000 OK 54, 8 P.3d 877, 71 OBJ 1775, MESSER-BOWERS CO. v. STATE ex. rel.. OKLAHOMA WATER RESOURCES BD.
Discussed
Title 3. Aircraft and Airports Cite
Name
Level 3 O.S. 61, 3 O.S. 61, Municipalities Power to Acquire and Operate Airport Facilities-Eminent Domain-Issue Bonds
Cited
Title 11. Cities and Towns Cite
Name
Level 11 O.S. 22-104, Right to Engage in Business - Public Utilities and Improvements - Eminent Domain - Issuance of Bonds - Lease of Public Utility
Cited 11 O.S. 37-101, Definitions
Cited 11 O.S. 37-120, Extension of Lines Beyond Limits - Contracts for Furnishing Water Outside Limits.
Discussed 11 O.S. 37-121, Contract or Lease for Purchase, Sale and Distribution of Water - Extensions
Cited
Title 79. Trusts and Pools Cite
Name
Level 79 O.S. 201, Short Title
Cited
Title 82. Waters and Water Rights Cite
Name
Level 82 O.S. 105.1, Definitions
Cited 82 O.S. 105.9, Application for Water Rights
Discussed 82 O.S. 105.21, Surplus Water
Discussed