CAPITAL TELEPHONE COMPANY, INC., et al., Appellants-Respondents, v NEW YORK TELEPHONE COMPANY, Respondent-Appellant.

Third Department, May 4, 1989

**APPEARANCES OF COUNSEL**

*Roland, Fogel, Koblenz & Carr (Keith J. Roland* of counsel), for appellants-respondents.

*Colvin W. Grannum* for respondent-appellant.

**OPINION OF THE COURT**

LEVINE, J.

Plaintiff Capital Telephone Company, Inc. (hereinafter Capital) is a radio telephone utility located in Schenectady County which provides two-way mobile telephone service and one-way paging service for customers in the Capital District area.* In conducting its operations, Capital is obliged to use various services and facilities provided by defendant, New York Telephone Company (hereinafter NYT), including direct inward dialing, incoming and outgoing circuits, the telephone book listings and telephone numbers in blocks of 100, which are part of what is called an NNX code, i.e., a group of 10,000 numbers with the same three-digit prefix. The provision of and charges for these NYT services and the facilities Capital

---

* The remaining plaintiffs are affiliated with Capital, offering the same or similar services. All plaintiffs will be referred to collectively as Capital.

uses are subject to regulation by the State Public Service Commission (hereinafter PSC) and the Federal Communications Commission (hereinafter FCC).

Capital competes with an affiliate of NYT in offering two-way mobile radio telephone service in the Capital District and with Pattersonville Telephone Company (hereinafter Pattersonville) in providing one-way paging service. Pattersonville's main business is as a landline telephone company providing regular local telephone service to customers in an area adjoining the Capital District. In connection with its paging service business, Pattersonville also avails itself of much the same utilities of NYT that Capital uses.

Starting as early as 1969, Capital brought administrative complaints before the PSC and the FCC that NYT was unlawfully giving preferential treatment to Pattersonville or other landline telephone companies as to the provision of radio telephone-related services and facilities to Capital and those competitors, and in NYT's charges therefor. In general, these complaints have been rejected by the PSC and FCC after investigation and/or a hearing, each agency finding that the distinctions between landline companies and Capital's functions were sufficient to justify the discrepancies in treatment. In the last of these proceedings before the PSC, commenced by Capital in 1983, one of Capital's demands for equal treatment was accepted and NYT was directed prospectively to provide Capital with an NNX code free of charge.

Capital also brought a Federal antitrust action against NYT in the United States District Court, Northern District of New York, and a separate suit in State court against Pattersonville under the antitrust provisions of the State's Donnelly Act (General Business Law §§ 340-347), all arising out of the allegedly preferential treatment that NYT accorded Pattersonville. The latter suit is still pending (see, Capital Tel. Co. v Pattersonville Tel. Co., 56 NY2d 11). In the Federal antitrust action, the District Court granted NYT's motion for judgment on the pleadings and dismissed Capital's claim. The dismissal was affirmed on appeal (Capital Tel. Co. v New York Tel. Co., 750 F2d 1154, cert denied 471 US 1101).

Thereafter, Capital commenced this action against NYT, asserting four causes of action. The first of these again alleged a Donnelly Act violation, that NYT and Pattersonville entered into an agreement or conspiracy to restrain competition, establish and maintain a monopoly and injure Capital by

giving preferential treatment to Pattersonville, dividing markets and otherwise denying services and business opportunities to Capital. The second and third causes of action alleged essentially a civil conspiracy on the part of NYT and Pattersonville to injure and interfere with Capital's trade or business. In Capital's fourth cause of action, damages are sought for NYT's discriminatory fees and provision of services, claimed to have been in violation of Public Service Law § 91 and recoverable under Public Service Law § 93.

After issue was joined and the parties engaged in pretrial discovery, NYT moved for summary judgment on the grounds that Capital's causes of action were barred by res judicata, failure to state a cause of action and by reason of regulatory preemption. Supreme Court denied the motion as to Capital's first cause of action but granted partial summary judgment dismissing the remaining claims. NYT now appeals from the denial of its motion as to Capital's first cause of action and Capital cross-appeals only from the dismissal of its fourth cause of action.

We affirm Supreme Court in all respects. NYT's sole argument on its appeal is that under the New York transactional analysis approach to res judicata (claim preclusion), Capital's Donnelly Act cause of action, complaining generally of the same discriminatory treatment, is barred by the dispositions on the merits of Capital's Federal antitrust action and of the similar complaints made to the PSC and FCC (citing, *Matter of Hodes v Axelrod,* 70 NY2d 364, 373; *Smith v Russell Sage Coll.,* 54 NY2d 185, 192; *Matter of Reilly v Reid,* 45 NY2d 24, 29). We disagree. As to the effect of the dismissal of Capital's Federal antitrust action, concededly Capital did not assert any Donnelly Act claim in that suit. The dismissal was on the ground that, even if the conduct complained of would otherwise have established an actionable violation of Federal antitrust laws, the doctrine of "State action immunity" from antitrust liability applied as a result of the State's regulatory involvement in the conduct complained of *(see, Capital Tel. Co. v New York Tel. Co., supra,* at 1160-1163). Moreover, the court explicitly recognized that no comparable immunity doctrine exists under New York law as to Donnelly Act claims *(supra,* at 1165, n 7).

Assuming, arguendo, that the dismissal of Capital's Federal suit under the State action immunity doctrine constituted a disposition on the merits of a claim involving conduct sufficiently related to the complaint in Capital's instant Donnelly

Act cause of action to meet the transactional analysis test, this nonetheless would not preclude Capital's assertion of that State antitrust claim. As is clearly indicated in *Matter of Reilly v Reid (supra)*, in which the Court of Appeals first adopted the transactional analysis approach of the Restatement (Second) of Judgments, theories of recovery or claims to remedies not asserted in a prior adjudicated action are barred if their foundational facts are the same as the earlier complaint, because a litigant is not permitted to thereby "split" his claim *(see, Matter of Reilly v Reid, supra,* at 30; Restatement [Second] of Judgments § 24, comment a; § 25 [1982]). An exception to the Restatement's rule against "splitting" transactionally related claims exists, however, which is directly applicable here. Capital could only have asserted and had its Donnelly Act claim entertained in its Federal antitrust action by reason of the District Court's "pendent" jurisdiction *(see, Travelers Indem. Co. v Sarkisian,* 139 AD2d 27, 29). But it is clear that once the District Court dismissed Capital's Federal antitrust claim before trial, as it did, it would have declined to exercise jurisdiction over any accompanying claim based exclusively on State law, and would have dismissed that claim without prejudice to its prosecution in the State courts *(see, supra; see also, McLearn v Cowen & Co.,* 660 F2d 845; *McLearn v Cowen & Co.,* 48 NY2d 696, *on rearg* 60 NY2d 686). This being so, the adjudication of Capital's Federal suit does not bar the present Donnelly Act cause of action. "If however, the [Federal] court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, *would clearly have declined to exercise it* as a matter of discretion), then a second action in a competent court presenting the omitted theory or ground *should be held not precluded*" (Restatement [Second] of Judgments § 25, comment e [1982] [emphasis supplied]; *see also,* Restatement [Second] of Judgments § 25, illustration 10 [1982]). Obviously, Capital should not be held barred for not asserting a claim in the prior Federal action which, if asserted, would not have been adjudicated on the merits.

Nor is the Donnelly Act cause of action barred by the adjudication of Capital's factually related complaints before the PSC and the FCC. The PSC is a tribunal of limited jurisdiction whose purposes and responsibilities do not include enforcement of the State's antitrust laws *(Capital Tel. Co. v Pattersonville Tel. Co.,* 56 NY2d 11, 19, *supra)*. Even if the PSC were to have considered NYT's anticompetitive conduct

in connection with Capital's complaint, the agency would not have been bound to give that factor the weight that a competent court of general jurisdiction would be required to give it in a plenary suit brought to enforce antitrust violations by NYT *(see, Matter of Tele/Resources, Inc. v Public Serv. Commn.,* 58 AD2d 406, 410-411, *lv denied* 43 NY2d 647). Moreover, the Donnelly Act treble damage remedy was not available to Capital in prosecuting its complaints before the PSC *(see,* General Business Law § 340 [5]). These considerations militate against giving claim preclusive effect to the PSC's determinations *(see,* Restatement [Second] of Judgments § 83, comment g [1982]; *see also, Thomas v Washington Gas Light Co.,* 448 US 261, 281-283). NYT has not shown any basis for not applying the same reasoning as to the FCC's determinations concerning Capital's complaints to that administrative body. We also note that NYT's motion for summary judgment dismissing Capital's first cause of action did not invoke any issue preclusion ground arising out of the determinations by the PSC or the FCC *(cf., Ryan v New York Tel. Co.,* 62 NY2d 494). It follows that Supreme Court correctly denied NYT's motion for summary judgment dismissing Capital's first cause of action.

We are also in agreement with Supreme Court's dismissal of Capital's fourth cause of action, seeking damages under Public Service Law § 93 for discrimination in charges and providing services, allegedly in violation of Public Service Law § 91. Capital's opposing papers present no proof in admissible form that the violations of Public Service Law § 91 pleaded in Capital's complaint herein were not also the subject of the various proceedings it initiated before the PSC, including the last of which, 26 PSC 1305 (case No. 28677), decided in 1986 after full hearings. As already noted, the PSC's determinations clearly rejected Capital's complaints of discrimination as being without merit, with the single exception that, in case No. 28677, NYT was ordered to submit a plan for giving Capital its own NNX code without charge except for blocks of telephone numbers actually ordered. In this respect, the PSC did not find that NYT's prior denial of such a service to Capital constituted a statutory violation, but only created a prospective duty on NYT's part to provide it. Indeed, the PSC explicitly ruled otherwise as to any violation by such prior denial of an NNX code, in its finding that NYT's decision to deny the NNX code "was not unreasonable or improper when made" ([1986] 26 PSC 1305, 1320). Since

Capital did not show that it lacked a full and fair opportunity to litigate the discrimination issues determined by the PSC, Supreme Court properly held that it was precluded from relitigating them in its fourth cause of action here *(see, Ryan v New York Tel. Co., supra,* at 501).

KANE, J. P., CASEY, WEISS and MERCURE, JJ., concur.

Order affirmed, without costs.