**BROWNSBURG COMMUNITY SCHOOL CORPORATION,**
Appellant–Defendant,

v.

**NATARE CORPORATION,**
Appellee–Plaintiff.

No. 49A02–0310–CV–871.

Court of Appeals of Indiana.

May 13, 2004.

---

James S. Stephenson, Wayne E. Uhl, Stephenson, Daly, Morow & Semler, Indianapolis, IN, Attorneys for Appellant.

Thomas A. Pastore, Pastore & Gooden, P.C., Indianapolis, IN, Attorney for Appellee.

**OPINION**

BAKER, Judge.

Appellant-defendant Brownsburg Community School Corporation (Brownsburg) appeals the denial of its motion for judgment on the pleadings in favor of appellee-plaintiff Natare Corporation (Natare). Specifically, the issue certified in this interlocutory appeal is whether a municipal entity such as a school corporation is a "person" as defined by Indiana Code section 24–1–2–10, and therefore subject to suit for treble damages and attorney fees under Indiana Code section 24–1–2–7. Concluding that a school corporation is a "person" within the meaning of the statute, we affirm the order of the trial court.

*FACTS*

Brownsburg undertook a building project that included a swimming pool. Brownsburg hired Schmidt Associates (Schmidt) as its architect, and Schmidt retained Spear Corporation, a distributor for Myrtha Pools USA who manufactures prefabricated pools, as a pool consultant. Specifications were drafted for general contractors to bid on the entire project. They included specifications for a cast-in-place (concrete and tile) pool, and alternate specifications for a prefabricated pool tank, for which Spear provided the language.

The specifications also provided for a moveable bulkhead in the pool.

Natare, a competing manufacturer and constructor of pools, complained that the alternate specifications contained features that could only be met by a Myrtha Pools system, thereby excluding Natare's products from consideration by the general contractor. Natare attempted to have its products, including its prefabricated pool tank and moveable bulkhead, given "or-equal" status so that it could be considered as a subcontractor. Schmidt responded that Natare's products were not considered equal to the system described in the specifications. Three general contractors submitted bids for the entire project. They relied on supplier bids from either L & W Construction or Spear. Prior to the bidding, several general contractors contacted Natare to inquire whether Natare would be submitting a subcontractor bid for the project.

On March 6, 2003, Natare filed suit against Brownsburg, Schmidt and Spear, alleging that they had conspired to exclude Natare from consideration as a supplier for a school construction project in violation of Indiana Code section 24–1–2–3. Specifically, Natare alleged that the wording of the specifications unreasonably limited competition by preventing contractors from bidding without using Myrtha Pool materials and equipment supplied by Spear, and that Spear had a significant role in determining whether other products were "or-equal." The complaint sought treble damages, costs and attorney fees under Indiana Code section 24–1–2–7. Brownsburg answered the complaint on April 28, 2003, and moved for judgment on the pleadings under Indiana Trial Rule 12(C), alleging that it was not a "person" as defined by the Anti–Trust provisions. The trial court held a hearing on the motion that was denied on July 31, 2003.

Brownsburg moved for certification of an interlocutory appeal, which the trial court granted on September 10, 2003. We accepted jurisdiction on October 31, 2003.

### DISCUSSION AND DECISION

■ Initially, we note that a motion for judgment on the pleadings under Trial Rule 12(C) is an attack on the legal sufficiency of the pleadings. *Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 661 (Ind.Ct. App.2002). Our review of the trial court's ruling on a Trial Rule 12(C) motion is, therefore, de novo and a motion for judgment on the pleadings will not be granted unless it is clear from the face of the complaint that under no circumstances could relief be granted. *Id.*

■ Indiana's Anti–Trust Act was originally enacted in 1907. In essence, Natare asserts that Brownsburg, Schmidt and Spear violated our anti-monopoly statutes and points to Indiana Code section 24–1–2–3, which states, "A person who engages in any scheme, contract, or combination to restrain or restrict bidding for the letting of any contract for private *or public work*, or restricts free competition for the letting of any contract for private *or public work*, commits a Class A misdemeanor." (Emphasis added). In light of this alleged violation, Natare seeks civil relief, including treble damages and attorney fees, under Indiana Code section 24–1–2–7, which states:

> Any person who shall be injured in his business or property by any person or corporation by reason of the doing by any person or persons of anything forbidden or declared to be unlawful by this chapter may sue therefor in the circuit or superior court of any county in which the defendant or defendants, or any of them, reside or are found without respect to the amount in controversy, and shall recover a penalty of threefold

the damages which may be sustained, together with the costs of suit, including a reasonable attorney's fee.

Additionally, the term "person" is defined by Indiana Code section 24–1–2–10:

The words "person" or "persons" whenever used in this chapter shall be deemed to include *corporations,* associations, limited liability companies, joint stock companies, partnerships, limited or otherwise, existing under or authorized by the laws of the state of Indiana, or of the United States, or of any state, territory, or district of the United States, or of any foreign country.

(Emphasis added). The purpose of the antitrust act is to "... prevent fraud and collusion in the letting of contracts and to protect trade and commerce against unlawful restraints and monopolies." *City of Auburn v. Mavis,* 468 N.E.2d 584, 586 (Ind.Ct.App.1984). Moreover, we note that Indiana Code section 24–1–2–7 "confers on private individuals the right to challenge the award of a government contract where the governmental entity and successful bidder have engaged in collusion or fraud." *Shook Heavy and Environ. Constr. Group v. City of Kokomo,* 632 N.E.2d 355, 358 (Ind.1994) (citing *City of Auburn,* 468 N.E.2d at 585).

### I. *Statutory Construction*

Brownsburg argues that the term "corporations" was not meant to include municipal entities through several maxims of statutory construction. The cardinal rule of statutory construction is to ascertain the intent of the drafter by giving effect to the ordinary and plain meaning of the language used. *Hochstedler v. St. Joseph County Solid Waste Mgmt. Dist.,* 770 N.E.2d 910, 914 (Ind.Ct.App.2002). If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *Id.* Moreover, statutes must be read as a whole, and statutory language must be read and interpreted in context. *Schafer v. Sellersburg Town Council,* 714 N.E.2d 212, 218 (Ind.Ct.App.1999).

Brownsburg first argues that the statute is ambiguous because the word "corporation" encompasses several pages in Black's Law Dictionary. However, merely because the General Assembly did not specifically designate every type of corporation to which the statute applies does not render the statute ambiguous. We may presume that the General Assembly meant "corporation" to have the broadest possible meaning because it did not supply any limiting language. *See Glotzbach v. State,* 783 N.E.2d 1221, 1227 (Ind.Ct.App.2003) ("Moreover, we may presume that the legislature intended that we interpret the term "present" in its broadest sense. The legislature did not use language of limitation such as "in the view of" or "seen by." ")

In support of their argument, Brownsburg contends school corporations cannot be included in the definition of corporation because the context of Indiana Code section 24–1–2–10 "strongly suggests application to *private* business corporations, because "corporation" are grouped with other business entities." Appellant's Br. p. 10 (emphasis in original). On the contrary, Brownsburg entirely ignores the context of the Anti–Trust Act as a whole. Indiana Code section 24–1–2–3 prohibits the restriction of free competition "for the letting of any contract for private *or public work.*" The government is necessarily involved where public work is concerned. The General Assembly has given no indication that a private entity that is involved in collusion can be sued while the co-conspirator that happens to be a public entity is in no way liable for wrongdoing under this statute. Such as contention is contrary to logic. Thus, the canons of

statutory construction do not militate for a decision in Brownsburg's favor.

## II. Public Policy

Brownsburg next contends that public policy supports its interpretation of Indiana's Anti–Trust statute. In essence, Brownsburg's argument is that Natare's interpretation would subject the taxpayers of local governments to awards of treble damages and attorney fees.

In support of its argument, Brownsburg cites the decision of the General Assembly to forbid punitive damages against political subdivisions in tort cases. Ind.Code § 34–13–3–4. However, this is not a case sounding in tort. This is a case where it is alleged that a political subdivision of the State intentionally committed an act that violates a provision of Indiana law. To be sure, it is more reprehensible for a municipality to willfully ignore or violate the law than to do so negligently. Furthermore, it is equally as reprehensible, if not more so, for governmental entities to engage in such conduct than for a private individual to do so.

While we agree with the general proposition that it is counterproductive to punish the taxpayers who likely had nothing to do with the conduct that would otherwise trigger the assessment of punitive damages, it is not the sole objective of the statute at issue to protect the taxpayers. Inasmuch as competing bidders are the most damaged by violations of the Act, the statute also protects their rights. The remedy of treble damages and attorney fees exists to compensate a prospective bidder who can prove fraud or collusion against the public entity, thereby serving the second purpose of the statute of protecting competing bidders. This is especially true considering that injunctive relief available to taxpayers is not available to aggrieved prospective bidders who reside outside the taxing district. *Shook,* 632 N.E.2d at 359. To deny the non-taxpayer prospective bidder the right to collect statutory damages and fees from the awarding entity would deny these prospective bidders any relief whatsoever.

## III. Common Law and Precedent

Notwithstanding any discussion above, Brownsburg urges that common law principles should preclude it from being held liable in these circumstances. Historical context can be helpful in interpreting a statute. *See Baldwin v. Reagan,* 715 N.E.2d 332, 338 (Ind.1999); *Vicory v. State,* 272 Ind. 683, 400 N.E.2d 1380, 1382 (1980). When the legislature enacts a statute in derogation of common law, it is presumed that they did not intend to make any change in the common law beyond what it declares either in express terms or by unmistakable implication. *Rocca v. Southern Hills Counseling Ctr.,* 671 N.E.2d 913, 920 (Ind.Ct.App.1996).

Brownsburg correctly points out that in the late nineteenth century, "Contracts made by public agents [stood] upon a different footing from those made by agents of persons or of private corporations." *School Town of Monticello v. Kendall,* 72 Ind. 91, 94 (1880). Moreover, it was presumed that school corporations were immune from suit. *Freel v. School City of Crawfordsville,* 142 Ind. 27, 41 N.E. 312 (1895) ("where subdivisions of the state are organized solely for a public purpose, by a general law, no action lies against them for an injury received by a person on account of the negligence of the officers of such subdivision, unless a right of action is expressly given by statute"). This, however, does not make it "highly unlikely" that a school corporation can be sued under this statute today. Appellant's Br. p. 11. In the last century, the General Assembly has increasingly allowed the government to be sued for wrongdoing. Since 1974, all public entities have been held liable for their negligent actions. Ind.Code § 34–13–3–1

et seq., formerly Ind.Code § 34–4–16.5–1. Most importantly, in 1959, the General Assembly enacted a statute that created school corporations and expressly determined that they *could* be sued for their actions. Ind.Code § 20–4–1–26.1., formerly Ind.Code § 20–4–1–26.

Indiana precedent also supports a finding that a school corporation is a person under the Indiana Anti–Trust Act. In *City of Auburn,* a losing bidder for a local public purchase filed suit against Auburn under the same Anti–Trust Statute at issue here by alleging that the City contrived to develop unlawfully restrictive specifications for radio equipment, which the City intended to purchase through the public bidding process. *City of Auburn,* 468 N.E.2d at 584. The effect of the restrictive specifications was to unlawfully favor the successful bidder. The trial court entered judgment against the City and awarded treble damages and attorneys' fees to the plaintiff. *Id.* at 585. Although we did not directly address the issue of whether the City was a person within the meaning of the statute, we did affirm the trial court's ruling in favor of the plaintiff. *Id.* at 587. Additionally, in *All–Star Constr. and Excavating, Inc. v. Board of Public Works,* our supreme court said that one could bring an action for fraud or collusion in the award of a contract against a municipality under Indiana Code section 24–1–2–7. 640 N.E.2d 369, 370 (Ind.1994). Our supreme court went on to find that although All–Star had alleged constructive fraud, there was simply no evidence at trial that the City was engaged in fraud or collusion. *Id.*

Brownsburg argues, however, that *State v. Ziliak,* 464 N.E.2d 929 (Ind.Ct.App. 1984) controls our decision here. In *Ziliak,* the plaintiff sought treble damages against the State for criminal conversion under former Indiana Code section 34–4–30–1 (now 34–24–3–1), which provides for monetary remedies to victims of a crime. The *Ziliak* court found that the State could not commit a crime inasmuch as a crime is an offense against the State itself. *Id.* at 930. This holding, however, recognized that the State is a "person" within the statutory definition of Indiana Code section 35–41–1–2. Additionally, *Ziliak* did not address whether subdivisions of the State could commit crimes or be subject to awards of treble damages. Thus, *Ziliak* is inapposite here.

Moreover, federal precedent supports a conclusion that a school corporation falls under the definition of "person." The Indiana Anti–Trust Act was modeled after the federal Sherman Anti–Trust Act, 15 U.S.C. § 1 et seq., and has been interpreted in a manner consistent with the federal law interpreting the Federal Act. *Berghausen v. Microsoft Corp.,* 765 N.E.2d 592, 594 (Ind.Ct.App.2002). In *Chattanooga Foundry & Pipe Works v. Atlanta,* 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241 (1906), the United States Supreme Court held that a municipality is a "person" within the meaning of section 8 of the Sherman Act, the general definitional section, such that a municipality could be involved in an anti-trust lawsuit as a plaintiff. Seventy years later, the United States Supreme Court held that the Sherman Act applied equally to allow local governments to be defendants to a lawsuit as well as individuals and businesses unless the municipality's anticompetitive activities were authorized by the state pursuant to state policy to displace competition with regulation or monopoly public service. *Lafayette v. Louisiana Power and Light Co.,* 435 U.S. 389, 408, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978); *accord United States ex rel. Chandler v. Cook County,* 277 F.3d 969, 979 (7th Cir.2002), *A–1 Ambulance Serv., Inc. v. County of Monterey,* 90 F.3d 333 (9th Cir. 1996). Brownsburg has not alleged this

here. As discussed above, inasmuch as Brownsburg has presented us with no overriding policy reason for interpreting Indiana's Anti–Trust Act otherwise, we now explicitly hold that a municipality is a "person" who can sue and be sued under Indiana Code sections 24–1–2–1 et seq.

## CONCLUSION

We find that a municipality and its subdivision are a "person" as defined by Indiana Code section 24–1–2–10. Therefore, a school district may be sued for violations of our Anti–Trust Statute. Thus, the trial court did not err in denying Brownsburg's motion for judgment on the pleadings.

FRIEDLANDER, J., and BAILEY, J., concur.