BROWNSBURG COMMUNITY
SCHOOL CORPORATION, Appellant (Defendant below),

v.

NATARE CORPORATION, Appellee
(Plaintiff below).

No. 49S02–0409–CV–406.

Supreme Court of Indiana.

March 17, 2005.

Rehearing Denied June 2, 2005.

James S. Stephenson, Wayne E. Uhl, Indianapolis, IN, Attorneys for Appellant.

Thomas A. Pastore, Indianapolis, IN, Attorney for Appellee.

BOEHM, Justice.

We hold that the Indiana Antitrust Act does not create a civil treble damage remedy against an arm of government.

**Factual and Procedural Background**

■ The following facts are alleged in the complaint. We take them as true for purposes of this interlocutory appeal of the denial of a motion by a defendant for judgment on the pleadings.[1]

The School Corporation undertook a building project for Brownsburg High School that included a fine arts addition and a swimming pool. The School Corporation hired Schmidt Associates as its architect, and Schmidt retained Spear Corporation as a pool consultant. Spear is a distributor for Myrtha Pools USA, which manufactures prefabricated pools. Specifications were published for general contractors to bid on the entire project. Included were specifications derived from language provided by Spear calling for a concrete and tile cast-in-place pool and alternate specifications for a prefabricated pool tank. Plaintiff, Natare Corporation, a supplier of prefabricated pools based in Indianapolis, claims that the specifications included language that only a Myrtha prefabricated pool could meet. In addition to the pool tank, the specifications also called for a moveable bulkhead. Natare claims that the bulkhead specifications were based on a Myrtha design and excluded Natare's product from consideration. The School Corporation responds that its specifications were drawn to get the best product at the lowest cost. We of course express no opinion on the validity of either party's allegations.

The bid documents contemplated submission of proposals that did not meet the specifications, but only if any variations from specifications were approved by the architect.[2] Natare attempted to gain ap-

---

1. Under Trial Rule 12(C), motion for judgment on the pleadings is to be granted " 'only where it is clear from the face of the complaint that under no circumstances could relief be granted.' " *Forte v. Connerwood Healthcare, Inc.*, 745 N.E.2d 796, 801 (Ind. 2001) (quoting *Culver–Union Township Ambulance Serv. v. Steindler*, 629 N.E.2d 1231, 1235 (Ind.1994)). When reviewing a 12(C) motion, the reviewing court accepts as true the well-pleaded material facts alleged in the complaint, and bases its ruling solely on the pleadings. *Noblesville Redevelopment Comm'n v. Noblesville Assocs. Ltd. P'ship*, 674 N.E.2d 558, 562 (Ind.1996).

2. Paragraph 3.3.1 of AIA Document A701–1997, Instructions to Bidders provided:

   The materials, products and equipment described in the bidding documents establish a standard of required function, dimension, appearance and quality to be met by any proposed substitution. Whenever possible and without prejudice to price, quality, or other considerations, local sources of labor, materials and services shall be given preference. Generally, where words "or equal" appear, a product of another manufacturer will be acceptable, but only if approved in writing by the Architect prior to bidding in accordance with the provisions stated in the

·proval of its products, including its prefabricated pool tank and moveable bulkhead, as meeting this "or equal" requirement. Schmidt responded that Natare's prefabricated pool tank with a PVC liner system was not equal to the specified panelized heat bonded PVC laminated system. Schmidt also noted that Natare had not identified any completed projects using Natare's proposed system. Schmidt ultimately also rejected the Natare bulkhead design, which utilized foam materials in the buoyancy chambers, as not equal to the specified stainless steel movable bulkhead. After this exchange, three general contractors submitted bids for the entire project. Each relied on bids for the pool from either a local contractor or Spear.

In March 2003 Natare sued the School Corporation, Schmidt, and Spear, alleging that the three had conspired to exclude Natare from consideration as a supplier for the pool and bulkhead in violation of the provision of the Indiana Antitrust Act prohibiting combinations in restraint of trade, Indiana Code section 24–1–2–3 (2004). Natare alleged that the wording of the specifications unreasonably limited competition by requiring bidding contractors to use Myrtha Pool materials and equipment supplied by Spear, and that Spear had a significant role in determining whether other products were "equal." Pursuant to Indiana Code section 24–1–2–7, the complaint sought treble damages, costs, and attorney fees for violations of the Indiana Antitrust Act.

The School Corporation answered the complaint and moved for judgment on the pleadings under Indiana Trial Rule 12(C), alleging that it was not a "person" as that term is used in the Indiana Antitrust Act, and, therefore, was not an entity subject to the civil treble damages remedy provided by that statute. The trial court denied the motion but granted the School Corporation's petition to certify the order for interlocutory appeal. The Court of Appeals affirmed, holding that a school corporation is a "person" who can sue and be sued under the Indiana Antitrust Act. *Brownsburg Cmty. Sch. Corp. v. Natare Corp.*, 808 N.E.2d 148, 154 (Ind.Ct.App.2004). We granted transfer. *Brownsburg Cmty. Sch. Corp. v. Natare Corp.*, 822 N.E.2d 975 (Ind.2004).

## I. Public Purchasing

■■■ The Public Purchasing laws include provisions addressing contracts by school corporations, and requiring, *inter alia*, that the contract be awarded to "the lowest responsible and responsive bidder." [3] Ind.Code § 5–22–7–8 (2004). Only a citizen or a taxpayer of a municipality may challenge the award of a government contract under Indiana's Public Purchasing Statute. *See All–Star Constr. & Excavating, Inc. v. Bd. of Pub. Works*, 640 N.E.2d 369, 370 (Ind.1994); *Shook Heavy & Envtl. Constr. Group v. City of Kokomo*, 632 N.E.2d 355, 358 (Ind.1994). Natare is neither a citizen nor a taxpayer of Browns-

---

Contract Documents and these Instructions to Bidders. ·

**3.** The public bidding statute, as applied to school corporations, provides the school corporation the discretionary power to determine "the responsible offeror" that is "most advantageous to the governmental body, taking into consideration price and the other evaluation factors set forth in the request for proposals." Ind.Code § 5–22–9–7(a) (2004). The school corporation must have its purchase or lease available for the public. I.C. § 5–22–18–5(b)(3). A citizen or taxpayer of that school district may then seek to enjoin a contract attempted to be entered into pursuant to competitive bidding where the award is arbitrary, corrupt, or fraudulent. *Budd v. Bd. of Comm'rs of St. Joseph County*, 216 Ind. 35, 37, 22 N.E.2d 973, 975 (1939); *Bd. of Comm'rs of Henry County v. Gillies*, 138 Ind. 667, 673, 38 N.E. 40, 42 (1894).

burg, and therefore has no claim under that statute. However, this Court has observed that "[o]ne need not be a citizen or a taxpayer of the municipality . . . to maintain an action for fraud or collusion in the award of a contract. Ind.Code § 24–1–2–7." *All–Star*, 640 N.E.2d at 370. *Accord Shook*, 632 N.E.2d at 358. The statutory reference is to the treble damages provision in the Indiana Antitrust Act.

## II.   Indiana Antitrust Act

■   Because Natare has no claim for damages under the Public Purchasing Statute, it seeks to bring its claim under the Indiana Antitrust Act. Ind.Code § 24–1–2–1—12 (2004). The principal issue is whether a governmental entity is subject to the private treble damages remedy provided for violation of the antitrust act.

### A.   *The Statutory Framework*

Sections 1 and 2 of the Indiana Antitrust Act, I.C. § 24–1–2–1, *et seq.*, are comparable to the federal Sherman Act, 15 U.S.C. sections 1 and 2, respectively. Like section 1 of the Sherman Act, Indiana Code section 24–1–2–1 addresses combinations in restraint of trade. Similarly, section 2 of the Sherman Act and Indiana Code section 24–1–2–2 both deal with monopolization. Indiana has two additional provisions for which there is no federal counterpart. Section 3, I.C. § 24–1–2–3, prohibits the restraint of bidding for letting of contracts whether public or private, and Section 4, I.C. § 24–1–2–4, addresses remedies for "collusion or fraud" among contract bidders. Specifically, Section 4 of the Indiana Antitrust Act provides that in cases of "collusion or fraud . . . among the bidders at the letting of any contract or work as provided in [Section 3] . . . the principal who lets the contract . . . shall not be liable for such letting or on account of said contract . . ."

Section 4 thus frees the principal who lets a contract tainted by "collusion or fraud" among bidders from liability on the contract. By its terms, Section 4 applies only if there is "collusion or fraud . . . as provided in [Section 3]." It thus does not prohibit any conduct. Rather, it deals with remedies for violations of Section 3.

Section 3 of the Indiana Antitrust Act does not use the term "collusion or fraud," but does prohibit certain conduct. It provides:

> A person who engages in any scheme, contract, or combination to restrain or restrict bidding for the letting of any contract for private or public work, or restricts free competition for the letting of any contract for private or public work, commits a Class A misdemeanor.

I.C. § 24–1–2–3. Natare alleges that the defendants violated Section 3 by denying Natare's products "equal" status under the specifications and thereby restraining Natare's ability to bid. The School Corporation responds that because it is a governmental entity it is not subject to the Indiana Antitrust Act's criminal and civil penalties.

### B.   *Indiana Case Law*

Three appellate decisions have referred to the treble civil damage provision of the Indiana Antitrust Act in the context of a claim against a governmental entity, but none was faced with the question whether or not a remedy existed against the entity itself.

In *City of Auburn v. Mavis*, 468 N.E.2d 584, 585 (Ind.Ct.App.1984), the Court of Appeals affirmed a jury award of treble damages and attorney fees against the City of Auburn. Mavis was a losing bidder for a public contract to provide radio communications equipment to the Auburn Fire Department and brought an action against the City and D & L Communica-

tions, Inc. for violation of Section 3, which makes unlawful acts which operate to restrain open and free competition in bidding to obtain contracts for private or public work. *Id.* At trial the City of Auburn and D & L conceded that they violated this statute when they contrived to develop specifications favoring equipment sold by D & L before the City solicited bids. *Id.* at 586. On appeal, the City did not contend that it was immune from treble damages under the Indiana Antitrust Act. The issue, though assumed, was not debated in either the trial court or the Court of Appeals.

In *Shook Heavy & Environmental Construction Group v. City of Kokomo,* 632 N.E.2d 355 (Ind.1994), an unsuccessful bidder claimed that the City of Kokomo violated Indiana's Public Purchasing Statute by failing to award the contract to the lowest bidder. Kokomo had solicited bids for the construction of a municipal sludge composting facility. When the bids were opened, Kokomo awarded the contract to the lowest responsible and responsive bidder. Shook Heavy & Environmental Construction Group, a losing bidder, filed suit in federal court seeking an injunction against the award of the contract on the basis that deficiencies in the bid of the apparent low bidder caused that bidder's bid to not be lower than Shook's. *Id.* at 357. In response to a certified question from the federal district court, we held that because Shook was not a citizen or taxpayer of Kokomo, Shook could not challenge the award under the Public Purchasing Statute. *Id.* at 358. Citing *Auburn,* we noted that Section 7 of the Indiana Antitrust Act allows an unsuccessful bidder to challenge the award of a contract by the city if the plaintiff alleges "collusion or fraud." *Id.*

■ The unsuccessful bidder in *Shook* sought only an injunction and asserted its claims under the Public Purchasing Act. In making this passing reference to remedies under Section 7, we were not faced with the question of who among the potential defendants might be subject to a "challenge" under this section. Nor were we concerned with precisely what form that challenge might take. A combination in restraint of trade necessarily involves at least two parties. Lawrence Anthony Sullivan, *Antitrust* 323 (West 1976). And an entity cannot combine with its own employees or subsidiaries. *See Schwimmer v. Sony Corp. Am.,* 677 F.2d 946, 953 (2d Cir.1982) ("collaborative action between a corporation and its employees, or among employees within a corporation, is not regarded as joint action within the meaning of § 1" of the Sherman Act); *Univ. Life Ins. Co. v. Unimarc Ltd.,* 699 F.2d 846, 852 (7th Cir.1983) (conspiracy between a corporation and its officers not actionable under Section 1 of the Sherman Act). *Cf. Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 778, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984) (A parent corporation and its wholly owned subsidiary are incapable of conspiring with each other for purposes of § 1 of the Sherman Act.); *Rep. of the Attorney General's Nat'l Comm. to Study the Antitrust Laws,* 30–36 (1955). Accordingly, at least one nongovernmental entity will ordinarily be a party to a combination in which a governmental entity is also a player. In short, *Shook* was not faced with, and did not consider, whether all parties, including the governmental entity, could be held liable for treble damages under the antitrust law.

*Shook* took its reference to Section 7 remedies directly from *All–Star Construction & Excavating, Inc. v. Board of Public Works,* 640 N.E.2d 369 (Ind.1994). Like *Shook, All–Star* merely observed that some remedy existed, without exploring precisely what remedy was available

against which entities. In *All–Star*, the lowest bidder for construction of a city's economic development project sued when the city awarded the contract to a competitor because it was "a local contractor and a minority contractor." 640 N.E.2d at 370. We held that there was no evidence that the City was engaged in "collusion or fraud," and the constructive fraud claim failed for that reason. *Id.*

In sum, the issue in this case, whether a local or municipal government is susceptible to a claim for treble damages under Indiana Code section 24–1–2–7, is a matter of first impression.

### C. *Criminal Liability of Governmental Entities*

By their terms, the only portions of the Indiana Antitrust Act that contain substantive prohibitions are Sections 1, 2, and 3. These sections are framed similarly to provisions of the Criminal Code and provide that it is a Class A Misdemeanor to engage in the actions prohibited. We think the legislature, when writing this statute in 1907, did not contemplate a governmental entity as a potential violator of its prohibitions. First, on the only occasion where the issue has been addressed by an Indiana appellate court, the Court of Appeals held that the State could not be criminally responsible, even where the statute prohibited acts by "persons" and defined "person" to include "governmental entities." In *State v. Ziliak*, 464 N.E.2d 929 (Ind.Ct.App.1984), landowners alleged that state employees committed criminal property offenses when the state employees entered upon the landowners' property and removed certain Indian artifacts with-

out permission. The landowners sought damages under Indiana Code section 34–4–30–1, which provides civil remedies to crime victims.[4] The Court of Appeals held: "A criminal offense is an offense against a sovereign state." *Id.* at 930 (citing *Reed v. Carrigan*, 190 Ind. 29, 129 N.E. 8 (1920)); 8 I.L.E. *Criminal Law* § 2 (1971); 21 Am.Jur.2d *Criminal Law* § 1 (1981); 22 C.J.S. *Criminal Law* § 1 (1961). "A crime is said to be an offense against the sovereignty." 21 Am.Jur.2d *Criminal Law* § 1 (1981). "Because a crime is an offense against the sovereign, it is axiomatic that the sovereign cannot commit a crime." *Ziliak*, 464 N.E.2d at 930. The court noted that the criminal code, I.C. § 35–41–1–22, defined "person" as "a human being, corporation, partnership, unincorporated association, or *governmental entity.*" *Id.* (emphasis in original). Despite this definition, the Court of Appeals concluded that the State was a "person" as that term is used in the Indiana Criminal Code only for purposes of its status as a victim.

■ Natare argues, and the Court of Appeals agreed, that *Ziliak* is inapposite here because it dealt with a claimed crime by the State itself, and did not address whether a subdivision of the State could commit a crime. *Brownsburg Cmty. Sch. Corp. v. Natare Corp.*, 808 N.E.2d 148 153 (Ind.Ct.App.2004). We find no authority supporting such a distinction. For the reasons expressed below we believe neither the State nor any other governmental entity is subject to criminal provisions of Indiana statutes without the legislation making that result absolutely clear.

---

**4.** In *Ziliak* it was agreed that the acts of state employees constituted violations of Indiana Code section 35–43–2–2 (criminal trespass), and Indiana Code section 35–43–1–2 (criminal mischief). 464 N.E.2d at 930. The Ziliaks sought damages provided in the section

now codified at Indiana Code section 34–24–3–1 (2004), which provided for a civil action for treble damages and attorneys fees for violations of Indiana Code section 35–43 among others.

Indiana law as reflected in *Ziliak* is consistent with other United States jurisdictions in rejecting the possibility of a crime by the government. Relevant federal cases and statutory authority are sparse. One federal statute carrying criminal penalties (regulating prices and profits for commodities in emergencies) defines "person" as "an individual, corporation, partnership, association, or any other organized group of persons ... and includes the United States or any agency thereof, or any other government, or any of its political subdivisions, or any agency of the foregoing." Emergency Price Control Act of 1942, c. 26, Title III, § 302(h), c. 26, 56 Stat. 36. Section 205 of the Act provides for injunctive remedies and criminal fines and imprisonment for convictions. However, the definition of person also explicitly states that: "no punishment provided by this Act shall apply to the United States, or to any [federal, state, or local] government, political subdivision, or agency." *Id.* This definition has been interpreted to mean that governmental agencies are exempt from the act's criminal liabilities, but not necessarily its remedial sanctions. *See* 1 *Working Papers of the Nat'l Comm. on Reform of Fed. Criminal Laws* 175 (1970), typically known as the Brown Commission. The Brown Commission also noted that though the Emergency Price Control Act specifically extended its prohibitions to governmental entities, "no case has been found in which a court has held such an agency subject to the Act." *Id.* The Brown Commission concluded by recognizing that although "there is nothing in the nature of a municipal corporation which would make it inherently incapable of committing a crime, there does not appear to be a Federal case holding a governmental entity as such criminally liable." *Id.* at 176.

State law also finds the concept of a crime by the sovereign to be an alien notion. We have found no criminal code in this country that imposes criminal liability on the sovereign and only one that would permit a fine on an arm of the government.[5] The Model Penal Code specifically excludes from its definition of "corporation" any entity "organized as or by a governmental agency for the execution of a governmental program." American Law Institute, *Model Penal Code* § 2.07(4)(a) (P.O.D.1962). The commentary to section 207(4)(a) observes that "[l]iability in such cases would seem entirely pointless, although of course the liability of individuals involved in criminal activity is preserved." 1 American Law Institute, *Model Penal Code* § 207(5)(a), at 345 (1985). At least five states have adopted a version of 2.07(4)(a).[6] Most states, however, like Indiana, contain no express treatment of the issue in their general criminal laws. In the absence of specific legislative direction, we think the Court of Appeals correctly concluded in *Ziliak* that the legislature did not contemplate a violation of

---

**5.** *See City of Ludlow v. Commonwealth*, 247 Ky. 166, 56 S.W.2d 958 (1933), where the city built an allegedly defective sewer that, when it rained, caused backups in the basements of several residences, "producing an odor so noisome, offensive, and sickening that the occupants of the houses could not eat or sleep." *Id.* at 958. The state prosecuted and the City was convicted of maintaining a common nuisance and fined $1,500. *Id.* It appealed. The court of appeals cited three earlier Kentucky cases in which cities had been held criminally liable for maintaining a public nuisance. The court reversed and remanded for a new trial on the grounds that the $1,500 fine imposed on the City violated Kentucky's constitutional prohibition of excessive fines. *Id.* at 968–69.

**6.** *See* Haw.Rev.Stat. § 702–229(1) (2003); N.J. Stat. § 2C:2–7(b)(1) (2004); N.D. Cent. Code § 51–08.1–01 (2003); Ohio Rev.Code Ann. § 2901.23(D) (2004); 18 Pa. Cons.Stat. § 307(F) (2004).

a criminal prohibition by a governmental entity.

### D. *Specific Provisions of the Indiana Antitrust Act*

Natare claims a violation of Section 3, and seeks treble damages for its lost time in preparing a useless bid and attorney fees, under Section 7 of the Indiana Antitrust Act.[7] That section, tracking section 15 of the Clayton Act, provides treble damages and attorneys fees for those injured in their "business or property" by a violation of the Indiana Antitrust Act. This section purports to give a right to treble damages to any "person" injured by any "person" doing "any thing forbidden or declared to be unlawful" by any of the first three sections of the Indiana Antitrust Act.[8] Consistent with the usual legislative silence on the application of criminal laws to governmental entities, the Indiana Antitrust Act neither defines "person" to include a governmental entity nor specifically excludes the possibility of a crime by such an entity.

The School Corporation argues that it is not a "person" as that term is defined in the antitrust act. Indiana Code section 24–1–2–10 provides definitions similar to those found in the Sherman Act, 15 U.S.C. § 7 (2000):

> The words "person" or "persons" whenever used in this chapter shall be deemed to include corporations, associations, limited liability companies, joint stock companies, partnerships, limited or otherwise, existing under or authorized by the laws of the state of Indiana, or of the United States, or of any state, territory, or district of the United States, or of any foreign country.

I.C. § 24–1–2–10. Natare argues that the School Corporation can be liable for treble damages and attorney fees because "person" is defined by the statute to include "corporations," and school corporations are not explicitly exempt from this definition. School corporations, like general business corporations, are creatures of statute. In the case of school corporations, they are created pursuant to Indiana Code section 20–4–1. Reflecting that statute, the Brownsburg School Corporation uses the term "corporation" as a part of its legal name. The Court of Appeals found this persuasive and agreed with Natare that a school corporation is a "person" subject to the treble damages remedy provided by the antitrust act. We disagree for reasons grounded in the text of the Antitrust Act as well as the general assumption that criminal laws are not applicable to governmental entities.

The School Corporation first argues that the term "corporation" is ambiguous and that the General Assembly did not intend the term to include governmental entities. As originally enacted in 1907, the antitrust law's definition of "person" included, "corporations," "associations," "companies" and "partnerships." The School Corporation points out that the other entities included in this definition as "persons" are all private business entities, and argues that this

---

**7.** Unlike the federal antitrust laws and those of most states, the Indiana Antitrust Act does not explicitly provide an injunctive remedy. Whether an injunctive remedy is available under the Indiana Antitrust Act, and if so whether it lies against a unit of local government are issues not presented in this case and we express no opinion on them.

**8.** "Any person who shall be injured in his business or property by any person or corporation by reason of the doing by any person or persons of anything forbidden or declared to be unlawful by this chapter may sue therefor ... and shall recover a penalty of threefold the damages which may be sustained, together with the costs of suit, including a reasonable attorney's fee." I.C. § 24–1–2–7.

implies all "persons" are from the private sector. Moreover, in contrast to the silence of the Antitrust Act on this point, the School Corporation offers a number of statutes where the General Assembly has treated political subdivisions as distinct from "corporations" and subjected public bodies to the same treatment as private corporations by express language.[9]

■ We do not believe the definition of person is the central issue in determining whether the School Corporation, or any arm of government, is susceptible to a claim for treble damages. Although we recognize the maxims of statutory construction involved here, we find them at best suggestions, and not directives. It would be anomalous indeed if a private business overcharged as a result of price fixing can recover treble damages but a school corporation cannot. We agree that municipal corporations are "persons" as that term is used in the Indiana Antitrust Act. They therefore can sue under Section 7 if injured in their "business or property" by an antitrust violation. But it does not follow that they are also potential treble damage defendants. In order to be sued under Section 7, a "person" must have done something "forbidden by" the Indiana antitrust law. The substantive prohibitions of the antitrust laws are criminal in nature. Accordingly, we think the legislation did not contemplate the possibility of a governmental entity engaging in an action forbidden by the statute. Rather, as Section 4 reflects, the statute views governmental entities as victims, not perpetrators, and explicitly relieves them of liability from a contract that was the result of collusive bidding.

Natare also asserts that when the General Assembly first enacted the statute that created school corporations, I.C. § 20–4–1–26.1 (formerly I.C. § 20–4–1–26), it expressly included a provision that school corporations could sue and be sued. We think this is of no relevance to the issue before us. The power to sue and be sued simply confers general legal capacity on the entity. It says nothing about what kinds of suits the entity may bring or what liabilities it may incur. Natare also points out that the Antitrust Act was amended by the General Assembly in 1986 and in 1993 and did not exempt municipal corporations

9. The minimum wage law defines an employer as "any ... corporation, ... the state, or other governmental agency or political subdivision." I.C. § 22–2–2–3. The Health provisions of the Code define "person" as "... a governmental entity, or a corporation." I.C. § 16–18–2–274(a). The School Corporation also refers to a number of schemes where different definitions of "person" expressly include or exclude government entities. *E.g.,* I.C. § 4–2–6–1(11) (Ethics & Conflicts of Interest for State Officers) (" 'person' means any ... corporation, ... or a governmental agency or political subdivision"); I.C. § 5–14–1.5–2(k) (Public Records & Meetings) (" 'person' means ... a corporation, ... or a governmental entity"); I.C. § 5–16–8–1 (Steel Procurement for Public Works) (separately defining "persons" as including a corporation and "public agency" as including local government units); I.C. § 8–1–22.5–1(e)–(f) (Utilities: Gas Pipeline Safety) (defining "person" to include corporations and "municipality" as a city, county, "or any political subdivision of the state"); I.C. § 8–21–3–1(12) (Aeronautics: Aircraft Finance) (" 'person' means ... corporation, ... or body politic"); I.C. § 9–13–2–124 (Motor Vehicles); I.C. § 13–29–1–2(p) (Environment: Low–Level Radioactive Waste) (defining "person" to include a corporation and "any other legal entity either public or private," and separately stating, "Person also includes the United States, states, political subdivisions of the state, and any department, agency, or instrumentality of the United States or a state"); I.C. § 14–8–2–202(d) (Natural Resources Dept.) ("person" means "... a corporation, or a governmental entity"); I.C. § 22–9–1–3 (Labor & Industrial Safety: Civil Rights) (separate definitions); I.C. § 22–12–1–18 (Labor and Industrial Safety: Fire Safety & Building Equipment) (defining person to include a "corporation ... or governmental entity").

form the act.[10] From this, Natare reasons that the General Assembly legislatively acquiesced in the municipal corporation's liability to suit. These amendments merely provided updated and uniform terms. They do not suggest that the General Assembly revisited the liability of municipal or local government entities.

### E. *Governmental Immunity*

Rejecting a treble damage remedy against a governmental entity is fortified by the fact that at the time the Indiana Antitrust Act was enacted there was no prospect of civil liability on the part of a governmental entity. Indiana recognized the common law doctrine of sovereign immunity until 1972, when this Court abolished sovereign immunity in most areas. *Campbell v. State,* 259 Ind. 55, 61–62, 284 N.E.2d 733, 736–37 (1972). In response to *Campbell,* in 1974, the Indiana legislature enacted the Indiana Tort Claims Act, which identified a list of governmental activities that are immunized by statute from tort liability. *See* I.C. § 34–13–3–3.

■ Natare argues that the Court of Appeals correctly concluded that because the General Assembly has "increasingly allowed the government to be sued for wrongdoing" the 1907 presumption of immunity has been eroded. *Brownsburg Comty. Sch. Corp.,* 808 N.E.2d at 152–53. The Court of Appeals noted that since 1974, the Tort Claims Act permits public entities to be held liable for negligence, I.C. §§ 34–13–3–1—25 (formerly I.C. § 34–4–16.5–1). The School Corporation points out that in the late nineteenth century it was presumed that school corporations were immune from suit. *Freel v.*

*Sch. City of Crawfordsville,* 142 Ind. 27, 28, 41 N.E. 312, 312 (1895) ("where subdivisions of the state are organized solely for a public purpose, by a general law, no action lies against them for an injury received by a person on account of the negligence of the officers of such subdivision, unless a right of action is expressly given by statute"). "A statute in derogation of the common law is presumed to be enacted with awareness of the common law." *Cook v. Whitsell–Sherman,* 796 N.E.2d 271, 275 (Ind.2003). In the legal environment of 1907 there was no need to provide explicitly that governmental entities could not be subjected to treble damages. It was assumed they were immune from suit. And, as explained by Part G, at that time the federal antitrust laws, which served as the prototype for the Indiana law, made the same assumption.

### F. *Public Policy*

Public policy considerations support our reading of the statute. This Court has recognized that treble damages are punitive in nature. *Obremski. v. Henderson,* 497 N.E.2d 909, 911 (Ind.1986) (referring to the treble damages remedy for crime victims provided by Indiana Code section 34–4–30–1 (now I.C. § 34–24–3–1)). The Tort Claims Act prohibits an award of punitive damages against a governmental entity. I.C. § 34–13–3–4(b). Courts have also been reluctant to impose punitive damages on government entities in part because the penalty falls ultimately on innocent taxpayers. *See State v. Carter,* 658 N.E.2d 618, 624 (Ind.Ct.App.1995) (sanction of attorney fees against State disfavored "because it is the citizen taxpayers who would bear the burden of this punitive

---

**10.** In 1986 the General Assembly amended the Indiana Antitrust Act's internal references to refer to "chapters" rather than "acts". Pub. Law No. 152–1986, Sec. 12. In 1993 the General Assembly amended the definition of "person" to include limited liability companies, a then novel form of organization. Pub. Law No. 8–1993, Sec. 335. Neither of these amendments effected any substantive change relevant here.

award"); *City of Gary v. Falcone*, 169 Ind.App. 295, 297, 348 N.E.2d 41, 42 (1976) ("if punitive damages were allowed against municipalities, the group for whose protection such damages were purportedly awarded, the citizens and taxpayers, would be the identical group who would bear the burden of the award. Such a result is anomalous, indeed."). Moreover, "it is far from clear that municipal officials ... would be deterred from wrongdoing by the knowledge that large punitive awards could be assessed based on the wealth of their municipality." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 268, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *see also Gares v. Willingboro Township*, 90 F.3d 720, 736 (3d Cir.1996) ("the reasoning that punitive damages serve as a deterrent becomes less sensible when applied to a municipality").

It is one thing to visit civil penalties on individuals who violate the law. And if a private organization employs persons who transgress, imposing penalties on the organization places the loss on those who voluntarily associated themselves with it. In the case of a for-profit organization, those individuals within the organization ordinarily stood to gain from the illegal activity. But imposing treble damages on a governmental entity visits the loss on wholly innocent taxpayers. Moreover, the treble damages remedy under the antitrust law is designed to deter unlawful competitive activity presumably undertaken to enhance the profits of the violators. But in this case of a violation of the antitrust laws by a governmental entity, the government will typically be a victim, not a beneficiary. That is the situation presented here if Natare's allegations are correct. For these reasons as well, we conclude that a governmental entity was not contemplated as a defendant under Section 7, and hold that the School Corporation cannot be held liable for treble damages.

## G. *Federal Antitrust Liability of Governmental Entities*

We also find instructive the history of government liability under the federal antitrust laws. It too points in the direction of nonliability.

The Clayton Act allows any "person" to be a plaintiff. The term is defined to include "corporations and associations existing under or authorized by" federal, state or foreign law. 15 U.S.C. § 12. As early as 1906 it was held that a municipality could be a plaintiff. *Chattanooga Foundry & Pipe Works v. City of Atlanta*, 203 U.S. 390, 396, 27 S.Ct. 65, 51 L.Ed. 241 (1906) (a municipality is a "person" entitled to sue under § 7 of the Sherman Act). *Chattanooga* did not address, and apparently was not presented with any of the issues discussed in Parts C, E, and F of this opinion. Similar rulings as to states and foreign nations followed. *See Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 320, 98 S.Ct. 584, 54 L.Ed.2d 563 (1978) ("a foreign nation otherwise entitled to sue in our courts is entitled to sue for treble damages under the antitrust laws to the same extent as any other plaintiff"); *Georgia v. Pa. R.R. Co.*, 324 U.S. 439, 447, 65 S.Ct. 716, 89 L.Ed. 1051 (1945) (State of Georgia was a "person" within provision of § 26 of the Clayton Act authorizing any person to sue for injunctive relief and to recover damages).

Whether an entity of local government could be sued for damages under the Sherman Act did not arise until many years later. In 1978, a four-Justice plurality of the Supreme Court held that a municipal utility, which had brought a treble damage claim against a competitor, could be subject to a counterclaim for treble damages. *City of Lafayette v. La. Power & Light Co.*, 435 U.S. 389, 412–13, 98 S.Ct. 1123, 55

L.Ed.2d 364 (1978). The plurality concluded that "the *Parker* doctrine exempts only anticompetitive conduct engaged in as an act of government by the State as sovereign or, by its subdivisions, pursuant to a state policy to displace competition with regulation or monopoly public service." *Id.* at 413, 98 S.Ct. 1123. Chief Justice Burger agreed that the municipal utility could be sued for treble damages but based his opinion on the nature of the entity as a competitor in a market place, not on its status as an arm of government. *Id.* at 419, 98 S.Ct. 1123. Four Justices dissented specifically complaining that exposure to treble damages could be ruinous to local governments. *Id.* at 440, 98 S.Ct. 1123. The dissenters took the view that a state can authorize its arms of government as it chooses, and the "state action" doctrine announced in *Parker v. Brown*[11] should exempt any government actor from the antitrust law. Shortly after *City of Lafayette,* the Court held that *Parker* immunity extended to a municipality only if its actions were in furtherance of a "clearly articulated and affirmatively expressed" state policy. *Cmty. Communications Co. v. City of Boulder,* 455 U.S. 40, 51, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982). The general grant of authority under Home Rule legislation, such as Indiana's, codified at Indiana Code section 36–1–3–1—9, was not a sufficiently articulated state policy to guarantee immunity.

Although no treble damage award had yet been entered against a governmental entity, after *City of Lafayette* and *City of Boulder,* that result was seen as a realistic possibility. Congress promptly responded to these decisions by enacting the Local Government Antitrust Act of 1984, codified at 15 U.S.C. §§ 34–36. That statute left governmental entities subject to injunctive or declaratory relief but prohibited recovery of antitrust damages "from any local government, or official or employee thereof acting in an official capacity."[12] 15 U.S.C. § 35(a). A "local government" within the meaning of the Act includes any "city, county, parish, town, township, village or any other general function governmental unit established by state law," and also "a school district, sanitary district, or any other special function governmental unit established by State law." 15 U.S.C. § 34(1)(A)-(B). The House Judiciary Committee pointed out that *City of Lafayette* and *City of Boulder* "appear to have limited the extent that antitrust immunity applicable to States will be accorded to local governments" and these decisions "could undermine a local government's ability to govern in the public interest. Most of the suits instituted by private

11. *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), dealt with a complaint for injunctive relief against enforcement of a state statute regulating agricultural output. Actions pursuant to a state regulatory scheme were held to be exempt from federal antitrust laws as "state action." The Supreme Court found "nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or its agents from activities directed by its legislature." *Id.* at 350, 63 S.Ct. 307. As a result of this holding, "state action" was expressly declared to be a defense for a wide variety of acts by governmental regulators and private citizens if done pursuant to state law, even if they might otherwise have violated federal antitrust laws.

12. It has been noted that the statutory immunity of the nonsovereign "local governments" exceeds the nonstatutory immunity of the sovereigns that created them. ABA *Antitrust Section: Monograph No. 15, Antitrust Federalism: The Role of State Law* at 72 n. 508 (1988). "The immunity from damages granted to local governments under the Act is absolute. The Act, however, does not immunize local governments from injunctive," enforcement procedures by the Department of Justice, or actions by the Federal Trade Commission. *Id.* at 72.

parties have sought treble damages from local governments." 5 *U.S.Code Congressional & Administrative News* 98 Cong.2d 1984 at 4603 (1985). The purpose of the Act was to "clarify" the application of the Clayton Act to the official conduct of local governments and eliminate "antitrust damage liability for official conduct of a local government and its officials." *Id.* Congress was also concerned that local taxpayers, the very persons the antitrust laws are designed to protect, are called upon to pay treble damage judgments rendered against local governments. Irving Scher, *Antitrust Adviser* § 7.09 at 43 (vol. 2, 4th ed.2003).

Indiana courts have generally followed federal precedent in interpreting the Indiana Antitrust Act. *E.g. Berghausen v. Microsoft Corp.*, 765 N.E.2d 592, 594–96 (Ind.Ct.App.2002); *Mavis*, 468 N.E.2d 584, 585–86; *Rumple v. Bloomington Hosp.*, 422 N.E.2d 1309, 1313–14 (Ind.Ct.App. 1981); *Citizens Nat'l Bank of Grant County v. First Nat'l Bank in Marion*, 165 Ind.App. 116, 125, 331 N.E.2d 471, 476 (1975). Consistent with that approach, a few states have followed *City of Lafayette* and *City of Boulder*.[13] We do not join them. Where the government activity is not competition with private enterprise, even the *City of Lafayette* Court lacked a majority for subjecting the municipality to treble damages. In any event, we think the rapid congressional removal of exposure of potential liability of municipalities under the antitrust laws also indicates that liability was simply not contemplated by federal antitrust legislation. When the implications of this potential liability were explored, it was promptly and soundly rejected.

We do not agree that federal precedent is appropriate in considering whether governmental immunity is available to municipal and local government units under state antitrust laws. *Parker* and its progeny turned significantly on the relationship between the federal government and the states as dual sovereignties. Municipal and local government units, on the other hand, are creatures of the State. As such there is no consideration of comity or deference. The only issue is the intention of the state legislature to impose or withhold liability. *See People ex rel. Freitas v. City and County of San Francisco*, 92 Cal. App.3d 913, 917, 155 Cal.Rptr. 319 (1979); *Fine Airport Parking, Inc. v. City of Tulsa,* 71 P.3d 5, 11 (Ok.2003) ("The principles of federalism that govern the relationship between the two sovereigns, the federal and state governments, do not apply to the relationship between a state and a municipality acting pursuant to state law. . . . The principles of federalism supporting the *Parker* doctrine are meaningless in an analysis of municipal liability"); *Town of Hallie v. City of Chippewa Falls*, 105 Wis.2d 533, 314 N.W.2d 321, 324 (1982) ("The relationship between the federal government and the states is not parallel to the relationship between the state government and the cities."). For the reasons already given, we do not read our statute to provide liability of governmental agencies. In this conclusion we join Massachusetts, New Jersey, Oklahoma and New York in rejecting the federal state action immunity doctrine under state antitrust law. *Monsanto Co. v. Dept. of Pub. Utils.*, 412 Mass. 25, 586 N.E.2d 982, 983 (Mass. 1992); *Fanelli v. City of Trenton*, 135 N.J. 582, 641 A.2d 541, 547–49 (1994); *City of Tulsa*, 71 P.3d at 12; *Capital Tel. Comp. v.*

---

13. *See Neyens v. Roth*, 326 N.W.2d 294, 298 (Iowa 1982); *Byre v. City of Chamberlain*, 362 N.W.2d 69, 74 (S.D.1985). Those jurisdictions afford immunity only if the municipal action is "clearly articulated and affirmatively expressed as state policy."

*New York Tel. Comp.*, 146 A.D.2d 312, 540 N.Y.S.2d 895, 896–99 (1989).

## Conclusion

The order of the trial court denying the motion of Brownsburg Community School Corporation for judgment on the pleadings is reversed. This case is remanded with direction to grant the School Corporation's motion for judgment on the pleadings.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ. concur.